PETERSEN, Assignee, Respondent, vs. SCHROEDER, imp., Appellant.

*January 10 — January 28, 1890.*

*Fraudulent conveyance: Insolvency: Voluntary assignment.*

1. In an action to set aside a conveyance made by an insolvent debtor to his father-in-law just prior to an assignment for the benefit of his creditors, there was evidence that the grantee lived within a mile of the grantor, and visited him frequently; that the deed was made to the grantee without solicitation or pressure on his part; that he had advanced to the grantor, during the seven years previous, over $3,000 without security, and that when the last advance was made the grantor had promised to convey the land to him; that the house on the land had been built with the grantee's money; and that on the day the deed was executed he went to the grantor's house at his request, and found the justice ready to take the acknowledgment, and was told that the deed would be recorded at once. The grantee testified positively that he did not know or suspect, until after the deed was executed, that the grantor was insolvent or embarrassed. *Held,* that the facts were insufficient to show that the grantee knew or had reasonable cause to believe that the grantor was insolvent, within the meaning of ch. 349, Laws of 1883. •

2. Mere grounds of suspicion as to the solvency of a debtor are not " reasonable cause to believe such debtor insolvent," within the meaning of said act.

APPEAL from the Circuit Court for *Calumet* County.

Action by the assignee of Adolph Moeller to set aside a conveyance executed by said Moeller and wife to the defendant *Schroeder*. The circuit court found as facts (1) that when said Moeller executed and delivered the deed to *Schroeder* said Moeller was insolvent, and he made it in contemplation of an assignment and insolvency, and with the intent to give the said *Schroeder* a preference for his debt; (2) that *Schroeder*, at the time of receiving such deed, had reasonable cause to believe Moeller was insolvent and that the same was made in contemplation of insolvency and an assignment; (3) that Moeller sent for *Schroeder* to receive said deed, and, on the same day and a few hours thereafter, executed the said assignment; (4) that Moeller is the son-in-law of *Schroeder;* (5) that at the time the deed was executed Moeller was indebted to *Schroeder* in the sum of $3,055 for money borrowed at divers times on and between July 7, 1877, and July 12, 1884, and interest; (6) that on July 12, 1884, *Schroeder* let Moeller have $100, and, in consideration thereof and of the pre-existing indebtedness of $2,955, Moeller then verbally agreed to deed the land to defendant; (7) that all the material allegations of the complaint are true.

As conclusions of law the court found (1) that said parol agreement of July 12, 1884, to convey said lands to *Schroeder* was void; (2) that *Schroeder* is entitled in equity to have the said $100, paid by him on July 12, 1884, to Moeller, returned to him; (3) that the plaintiff is entitled to judgment setting aside said deed and declaring the same to be void and of no effect on payment to *Schroeder* of $100 and interest from July 12, 1884; (4) that the plaintiff is entitled to recover costs. From the judgment entered accordingly the defendant *Schroeder* appeals.

For the appellant there was a brief by *Hudd & Wigman,* and oral argument by *J. H. M. Wigman.* They ar-

gued, among other things, that it does not follow, from the fact that the deed was made on the same day prior to the assignment, that the grantee knew or believed that the grantor was insolvent. *Farwell v. Jones*, 63 Iowa, 316; *Nelson v. Garey*, 15 Neb. 531; *Root v. Potter*, 59 Mich. 498; *Root v. Harl*, 62 id. 420. The mere facts that Moeller is a son-in-law of *Schroeder*, and that he sent for the latter to receive the deed, are not sufficient. *Grant v. Nat. Bank*, 97 U. S. 80; *Barbour v. Priest*, 103 id. 293; *Stucky v. Masonic S. Bank*, 108 id. 74; *Goldsworthy v. Roger Williams Nat. Bank*, 15 R. I. 586.

For the respondent there was a brief signed by *Seaman & Williams*, of counsel, and *Jos. B. Reynolds*, attorney, and the cause was argued orally by *W. H. Seaman*. They contended, *inter alia*, that the grantee had reasonable cause to believe his debtor insolvent. It was sufficient to show "such a state of facts or circumstances as would lead any prudent man to make inquiries," or that when brought home to him would tend to the conclusion "that the debtor cannot meet his obligations as they mature in the ordinary course of business." *Wager v. Hall*, 16 Wall. 584; *Toof v. Martin*, 13 id. 40; *Forbes v. Howe*, 102 Mass. 427; Bump on Bankruptcy (7th ed.), 698; *Abbott v. Shepard*, 142 Mass. 17. There was no actual delivery of the deed to the grantee or to any one authorized by and acting for him, and no actual acceptance by him, at any time before the assignment took effect. *Cooper v. Jackson*, 4 Wis. 537; *McCourt v. Myers*, 8 id. 236; *Welch v. Sackett*, 12 id. 243; *Miller v. Blinebury*, 21 id. 675; *McPherson v. Featherstone*, 37 id. 632; *Deere v. Nelson*, 73 Iowa, 186.

COLE, C. J. This action is brought by an assignee under ch. 349, Laws of 1883, to set aside a conveyance made by his assignor and wife to the defendant *Schroeder*. The conveyance was made but a few hours before the execution of

the assignment, and it is claimed that the evidence is con-
clusive that the intention of the parties to it was to secure
an unlawful preference of one creditor over another.   The
object of the act above referred to is very clear, and it pro-
hibits any such preference by a failing debtor who after-
wards makes an assignment, as this court has held under
cases coming before it.   The clause in the act which con-
trols the case in substance provides that every sale, mort-
gage, or other security of any name or nature, made or
executed upon his property, real or personal, by an insolv-
ent debtor, within sixty days prior to the assignment for
the benefit of creditors, and in contemplation thereof or of
insolvency, shall be void and of no effect: provided, the
vendee in such sale, or the person benefited thereby or re-
ceiving such mortgage or other security, knew, or had rea-
sonable cause to believe, such debtor insolvent.

It is very obvious that three facts or conditions must
exist to make the conveyance or instrument invalid under
this statute: (1) Insolvency of the debtor; (2) making the
sale or giving the security within sixty days prior to the
assignment and in contemplation thereof; (3) the person
receiving a benefit by the sale must know, or have reason-
able cause to believe, the debtor insolvent when the sale
was made or security given.   In this case it may be con-
ceded — indeed, the evidence to establish the fact is quite
cogent and satisfactory — that the assignor, Moeller, when
he executed the deed mentioned in the record, was insolv-
ent, unable to pay his debts, and that he executed the
deed in contemplation of the assignment made a few hours
later, as the learned circuit judge found; but the pinch of
the case is in proving that the grantee in the deed knew,
or had reasonable cause to believe, that the grantor was in-
solvent when the deed was executed.

The two principal facts which are relied on to show that
the grantee knew, or had reasonable cause to believe, the

grantor insolvent, was relationship,— he being the father-in-law of the grantor,— and because the parties lived within a mile of each other, and visited each other frequently. The defendant *Schroeder* is a German, and gave his testimony on the trial through an interpreter. He testified that he did not know the financial circumstances of his son-in-law or that he was in embarrassed circumstances when the deed was made, and there is absolutely no evidence to contradict this statement. He says: "The first time I found out Moeller was in embarrassed circumstances was a couple of days after he made the assignment. Before that I did not know, and had no cause to believe, that Moeller was insolvent or unable to pay his debts." This testimony as to *Schroeder's* knowledge of Moeller's financial condition, or, rather, his ignorance upon the subject, is greatly corroborated by his dealings with him for years. For six or seven years he was in the habit of loaning Moeller money, and, about six months before the deed in question was made, advanced him some. He took no security for these loans, although they amounted in all to over $3,000. It is not probable, had he known or even suspected that Moeller was in failing circumstances, that he would have let his debt stand without demanding some security for its payment. No prudent, rational man would thus advance money without security to a debtor, even within six months of the assignment, if he had cause to believe or suspect such debtor was insolvent or unable to meet his obligations. It does appear that in July, 1889, when *Schroeder* let Moeller have $100, the latter verbally agreed, in consideration thereof, and of the pre-existing indebtedness of nearly $3,000, to convey to the former the property mentioned in the deed sought to be avoided. The building on this property was erected mainly by *Schroeder's* money, some seven years before the transaction we have been considering, and Moeller said he considered the property to belong to his father-in-

law all the time, because he paid for the building on it. From these and other facts in the case we think there is no ground for holding that *Schroeder* knew, or had reasonable cause to believe, Moeller was insolvent when the deed was executed. He did not have knowledge of any fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man. His whole conduct repels all inference of the kind, for he would not have been so reckless as to advance his son-in-law money as he did, if he had knowledge of his affairs. It appears from the testimony of the justice, who took the acknowledgment of the deed and lived in the neighborhood, that, while there was some doubt about Moeller's financial standing, no one seems to have had any positive information on the subject, but it was generally supposed he was responsible. Under these circumstances, it well may be that *Schroeder* was ignorant of the real state of Moeller's affairs, as he swears he was, and did not know that he was insolvent and about to make an assignment.

But is claimed that the circumstances attending the execution of the deed were sufficient to put him upon inquiry, and that, if he had wished to know, the means of information were at hand, from which he would have learned that Moeller was heavily involved, and that creditors were issuing attachments against his property. There is no evidence that *Schroeder* knew of any such attachment. True, the deed was made to him without any solicitation or pressure on his part. But Moeller had promised to make it and put it on record, and was under strong obligation to do so, considering the manner his father-in-law had confided in and befriended him. The circumstances attending the making of the deed are entirely consistent with the theory that *Schroeder* was really and truly ignorant of Moeller's financial condition until after the deed was executed. " It is not enough that a creditor has some cause to suspect the in-

solvency of his debtor; but he must have such knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt.    To make mere suspicion a ground of nullity in such case would render the business transactions of a community altogether too insecure.    It was never the intention of the framers of the act to establish any such rule.    A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact.    He may be unwilling to trust him further.    He may feel anxious about his claim, and have a strong desire to secure it — and yet such belief as the act requires may be wanting.    Obtaining additional security or receiving payment of a debt, under such circumstances, is not prohibited by the law.    Receiving payment is put in the same category in the section referred to as receiving security.    Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside.    And yet this could be done in a large proportion of the cases, if mere grounds of suspicion of their solvency were sufficient for the purpose."    This is the language of the supreme court in *Grant v. National Bank,* 97 U. S. 80, in a case arising under the bankrupt law, when interpreting the clause in the act, " having reasonable cause to believe such person insolvent."    The language quoted is pertinent to the clause in the act of 1883, under which this controversy arose.

Our conclusion, therefore, is that we see no reason for discrediting the statement of *Schroeder,* who swore positively that he did not know nor suspect that Moeller was insolvent or in embarrassed circumstances until after the deed was executed.    There should be something proven more than the mere fact that he was the father-in-law of Moeller, and was frequently at Moeller's house, to warrant a court in holding that he must have known Moeller's finan-

cial condition when the deed was made.    We have carefully examined the testimony, and fail to find evidence of such knowledge on his part.  Suppose he was requested by Moeller to come to his house the morning the deed was made, and went there, found the justice ready to take the acknowledgment of the deed, and plaintiff present, and was informed that the deed was, or would be sent at once to be, recorded, what was there in all this, in view of Moeller's previous promise to give him such a deed, that would raise a suspicion, much less be ground of a reasonable cause to believe, Moeller was insolvent at the time?   Nothing was said to show that Moeller was about to make an assignment, and it is not shown that he had any knowledge of the fact.   He does not seem to have entertained even a suspicion of Moeller's failing condition.   Surely, there is no evidence of a "knowledge of any fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."    *Barbour v. Priest*, 103 U. S. 293.

. We think the evidence shows a good delivery of the deed, within the decisions of this court cited by the plaintiff's counsel.

It follows, from these views, that the judgment of the circuit court must be reversed, and the case remanded with directions to that court to enter judgment dismissing the complaint.

*By the Court.*— It is so ordered.