### In re PETTINGILL & CO.

(District Court, D. Massachusetts. February 3, 1905.)

No. 8,742.

1. BANKRUPTCY— PREFERENCES—REASONABLE CAUSE TO BELIEVE DEBTOR INSOLVENT.

Grounds for reasonable belief in the present inability of a debtor to pay his debts in the course of business are not necessarily grounds for believing that he is insolvent within the definition of insolvency contained in Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], so as to require the creditor to surrender payments received as preferences.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 256.]

2. SAME.

Something less than a year before his bankruptcy a debtor owed a creditor about $30,000, and on being pressed for payment made a payment of $8,000, and obtained an extension on the remainder. There had been large business transactions between the parties for years, which were continued, and during the time prior to his bankruptcy large credits were extended to the bankrupt, but large payments were also made. At the time agreed the old indebtedness was not paid, but shortly thereafter a payment of $10,000 was made. At that time the creditor applied to Dun's Commercial Agency and to another, from both of whom favorable reports were received as to the debtor's condition. *Held*, that the creditor did not have reasonable cause to believe the debtor insolvent.

within the meaning of the bankruptcy act, so as to require it to surrender payments received within four months prior to the bankruptcy as preferences under Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], before proving its claim, although the bankrupt was in fact insolvent.

In Bankruptcy. On review of decision of referee disallowing the claim of the Press Company.

Walter M. Lindsay, for trustee.

Jeremiah Smith, Jr., for creditor.

LOWELL, District Judge. The creditor seeks to prove. The referee has found that the proof cannot be allowed until preferences received have first been returned. When the payments were made March 21 and 24, 1904, the debtor was insolvent, and knew that he was insolvent. The sole question presented is this: Had the creditor reasonable cause to believe the bankrupt insolvent at the time of the payments? That the creditor had no actual knowledge of insolvency was admitted. The referee has found that he had reasonable cause to believe it. The bankrupt, an advertising agency, for years had done a very large business with the creditor, the New York World, as well as with other papers. This business was largely, but not wholly, on account of Greene's Nervura, a patent medicine. In May, 1903, the former owed the latter $30,273.41, and was pressed for payment. He offered in payment notes of the Nervura, indorsed by himself. When this arrangement was refused, he paid $8,000, asked an extension until October 15th for the balance, and this was given him. The referee finds that in May, if the creditor had investigated, he would have found both the bankrupt and the Nervura insolvent; but a request for time, accompanied by a large payment on account, does not indicate insolvency in the definition of the present bankrupt act, even when accompanied by an attempt to fund indebtedness. Moreover, we have to determine reasonable cause as of March, 1904, not as of May, 1903. Much happened between these dates. Business continued between the parties. On June 1, 1903, the indebtedness was $24,069.01; on October 1, $26,937.55, though over $5,500 had been paid in the meantime. In October, 1903, the bankrupt did not make the payment he had promised. The creditor pressed him, and at the last of the month obtained $10,000. Disturbed by the delay in payment, the creditor asked for a report on the bankrupt from Dun's Commercial Agency. The report was favorable. The creditor inquired also of Taylor, manager of the Boston Globe, and was reassured by the reply. On November 1st the indebtedness was $19,500.32; on January 1, 1904, it was $22,382.83, although in two months the bankrupt had paid over $5,000 on account. In December, 1903, the creditor again pressed for money, apparently on the old account, and the bankrupt agreed to pay $500 weekly. In January and February, 1904, about $13,000 credit was given, and only about $3,500 received on account. The agreement to pay $500 was not kept, though the shortage was small. About February 1st, instead of the weekly payment, the bankrupt agreed to pay $10,000 in March,

when the sales of Nervura were to be large. In March there was difficulty in getting the money. On March 12th the creditor wrote, "We shall have to have a definite date and a definite sum named, or be compelled to take steps to protect our account." $10,000 was promised definitely on March 15th. On March 21st $3,000 was paid, and on March 24th $2,000, the payments here alleged to be preferential. On March .26th the bankrupt openly failed. Before March 21st his financial embarrassment had been known to others, but there is no evidence of this creditor's reason to believe him insolvent, except substantially as above stated.

Obviously the creditor had some reasons for suspicion. To decide the case the court must determine how much reason to suspect insolvency is needed to constitute reasonable cause to believe that insolvency exists. Under Act March 2, 1867, c. 176, 14 Stat. 517, the term "insolvency" was defined as an inability to pay debts in course of business, yet in Grant v. The National Bank of Monmouth, 97 U. S. 80, 24 L. Ed. 971, the Supreme Court held that the renewal of a note, the overdrawing of a bank account, incorrect habits, a reckless manner of business, and seeming to be pressed for money was enough to make a creditor cautious and distrustful, but gave no reasonable cause to believe the debtor insolvent. The circumstances of suspicion in Grant v. The National Bank of Monmouth seem to me stronger than in the case at bar; but, even if they be weaker, yet the changed definition of insolvency in the present Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], makes a material difference in favor of the creditor alleged to be preferred. Insolvency is no longer inability to pay debts in the regular course of business, but exists only "whenever the aggregate of [the bankrupt's] property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts." Grounds for reasonable belief in a present inability to pay debts in the course of business are not necessarily grounds for believing that a man's property at a fair valuation is not sufficient to pay his debts.

In view of the decision and of the language of the Supreme Court in the case just mentioned, I am constrained to reverse the decision of the referee. See, also, King v. Storer, 75 Me. 63; Peterson v. Schroeder, 75 Wis. 577, 44 N. W. 652.