## GRANT *v.* NATIONAL BANK.

In order to invalidate, as a fraudulent preference within the meaning of the
Bankrupt Act, a security taken for a debt, the creditor must have had such a
knowledge of facts as to induce a reasonable belief of his debtor's insolvency.
It is not sufficient that he had some cause to suspect such insolvency.

APPEAL from the Circuit Court of the United States for the
Northern District of Illinois.

This case arises upon a bill in equity, filed by Charles E.
Grant, assignee in bankruptcy of John S. Miller, to set aside
a mortgage, or deed of trust, executed by him about two months
prior to his bankruptcy. Miller was indebted to the First Na-
tional Bank of Monmouth, Illinois, in about $6,200, of which
$4,000 consisted of a note which had been twice renewed, and
the balance was the amount which he had overdrawn his ac-
count in the bank. Wanting some cash for immediate purposes,
the bank advanced him $300 more, on his giving them the deed
of trust in question, which was made for $6,500, and was given
to secure the indebtedness referred to. The question below
was, whether, at the time of taking this security, the officers
of the bank had reasonable cause to believe that Miller was
insolvent. The Circuit Court came to the conclusion that they
had not, and dismissed the bill. From that decree the assignee
appealed.

*Mr. Thomas G. Frost* and *Mr. H. G. Miller* for the appellant.

Where a creditor, who accepts a conveyance to secure a pre-
cedent debt, has reason to believe that his debtor is at the time
unable to pay his debts as they become due, the conveyance is
void as a fraudulent preference within the meaning of the
Bankrupt Act. *Toof et al.* v. *Martin, Assignee, &c.,* 13 Wall. 40;
*Buchanan* v. *Smith,* 16 id. 308; *Wilson* v. *City Bank,* 17 id.
487; *Dutcher* v. *Wright,* 94 U. S. 553; *Forbes* v. *Howe,* 102
Mass. 437.

*Mr. C. B. Lawrence, contra.*

If Miller was in fact insolvent when he executed the deed
of trust, the officers of the bank had no knowledge of the fact,
nor any reasonable cause for believing it.

The deed of trust was given to secure $6,500, of which only

the sum of $4,000 was a precedent debt, the remaining $2,500 being 'for money advanced under the provision of the deed. Even if it could be held that the deed was constructively fraudulent as to the $4,000, it must be sustained as to the $2,500.

MR. JUSTICE BRADLEY, after stating the case, delivered the opinion of the court.

Some confusion exists in the cases as to the meaning of the phrase, "having reasonable cause to believe such a person is insolvent." *Dicta* are not wanting which assume that it has the same meaning as if it had read, "having reasonable cause to suspect such a person is insolvent." But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, — and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose.

The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know any thing of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his suc-

ceeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise. be avoided.

Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man.

It is on this distinction that the present case turns. It cannot be denied that the officers of the bank had become distrustful of Miller's ability to bring his affairs to a successful termination ; and yet it is equally apparent, independent of their sworn statements on the subject, that they supposed there was a possibility of his doing so. After obtaining the security in question, they still allowed him to check upon them for considerable amounts in advance of his deposits. They were alarmed ; but they were not without hope. They felt it necessary to exact security for what he owed them ; but they still granted him temporary accommodations. Had they actually supposed him to be insolvent, would they have done this?

The circumstances calculated to excite their suspicions are very ably and ingeniously summed up in the brief of the appellant's counsel ; but we see nothing adduced therein which is sufficient to establish any thing more than cause for suspicion. That Miller borrowed money ; that he had to renew his note ; that he overdrew his account ; that he was addicted to some incorrect habits ; that he was somewhat reckless in his manner of doing business ; that he seemed to be pressed for money, — were all facts well enough calculated to make the officers of the bank cautious and distrustful ; but it is not shown that any facts had come to their knowledge which were sufficient to lay any other ground than that of mere suspicion. Miller had for years been largely engaged in purchasing, fattening, and selling cattle. He had always borrowed money largely to enable him

to make his purchases; for this purpose he had long been in the habit of temporarily overdrawing his account: the note which he renewed was not a regular business note, given in ordinary course, but was made to effect a loan from the bank apparently of a more permanent character than an ordinary discount; and his manner of doing business was the same as it had always been. That he was actually insolvent when the trust-deed was executed, there is little doubt; but he was largely indebted in Galesburg, in a different county from that in which Monmouth is situated; and there is no evidence that the officers of the bank had any knowledge of this indebtedness.

Without going into the evidence in detail, it seems to us that it only establishes the fact that the officers of the bank had reason to be suspicious of the bankrupt's insolvency, when their security was obtained; but that it falls short of establishing that they had reasonable cause to believe that he was insolvent.

*Decree affirmed.*