## Richmond.

JOHNSTON, TRUSTEE, v. GEORGE D. WITT SHOE CO.

March 9, 1905.

Absent, Cardwell, J.

1. PLEADING—*Bankruptcy—Preferences—Fraudulent Transfers—Allegation and Proof.*—At common law, the giving of a preference by an insolvent debtor was not prohibited. If there was actual fraud in the transaction, however, it was voidable if the creditor, in any way, participated in the fraud. Under the bankrupt law, section 60, the giving of a preference, within four months of bankruptcy, is voidable by the trustee of the bankrupt, if the creditor had reasonable cause to believe that a preference was intended, and, under section 67, the making of a fraudulent conveyance, within four months, is void, except as against a purchaser in good faith and for a present fair consideration. If, therefore, a trustee in bankruptcy sues an alleged preferred creditor in assumpsit, and relies upon a special count under section 60 of the bankruptcy act, and upon the general counts, and fails to establish fraud on the part of the creditor, or reasonable grounds to believe that a preference was intended, there can be no recovery. Not under section 67 of bankruptcy act, because no cause of action under that section is stated in the declaration; nor under the general counts, because of failure to prove participation in the fraud by the creditor; nor under the special count, for failure to prove that the creditor had reasonable ground to believe that a preference was intended.

2. CONSIDERATION—*Antecedent Debts.*—An antecedent debt is, with us, a valuable consideration to support a sale, conveyance, or transfer of property in satisfaction or as a security for it.

3. BANKRUPTCY—*Preferences—Reasonable Belief of Insolvency.*—To avoid a preference made by an insolvent to a creditor within four months before bankruptcy, the creditor must have had more than a mere

suspicion that his debtor was insolvent. He must have had knowl-
edge of some fact or facts calculated to produce a belief of insol-
vency in the mind of an ordinarily intelligent man.
4. APPEAL AND ERROR—*Demurrer to Evidence—Evidence to Support—
Verdict.*—A plaintiff in error stands in this court as on a demurrer
to the evidence, and if there was any evidence to support a verdict
against him in the trial court, it will not be set aside.
5. INSTRUCTIONS—*Partial View of Case.*—An instruction which takes
only a partial view of the case, and omits material facts essential
to a proper decision of the case, should be refused.

Error to a judgment of the Circuit Court of the city of
Lynchburg, in an action of assumpsit, wherein the plaintiff in
error was the plaintiff, and the defendant in error was the
defendant.

*Affirmed.*

The opinion states the case.

The instructions given by the trial court were as follows:

"(1) First. That it is an act of bankruptcy for a person to
transfer, while insolvent, any portion of his property to one or
more of his creditors, with intent to prefer such creditors over
his other creditors.

"Second. That a person is deemed insolvent, within the pro-
visions of the bankruptcy law, whenever the aggregate of his
property, exclusive of any property which he may have con-
veyed, transferred, concealed, or removed, or permitted to be
concealed or removed, with intent to defraud, hinder, or delay
his creditors, will not, at a fair valuation, be sufficient in amount
to pay his debts.

"Third. That a person is deemed to have given a preference,
if, being insolvent, he has made a transfer of any of his prop-
erty, and the effect of this transfer is to enable any one of his
creditors to obtain a greater percentage of his debt than any
other of such creditors of the same class.

"Fourth.    That, if an insolvent person has made such a transfer, and within four months thereafter he files a petition in bankruptcy, then if the person receiving this transfer, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, then this preference shall be voidable by the trustee of the bankrupt, and he may recover the property, or its value, from the person receiving the same.

"Fifth.    That if the debtor making the payments is actually insolvent at the time, and the means of knowledge upon the subject are available, and the creditor receiving or being benefited by the payment, or his agent conducting the transaction, is in possession of such facts and circumstances as would lead a prudent business man to conclude that the aggregate of the debtor's property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to hinder, delay, and defraud his creditors, would not, at a fair valuation, be sufficient to pay his debts (or if the facts and circumstances in possession as aforesaid are such as clearly ought to put a prudent business man on inquiry), then, in either case, the law considers that there is reasonable cause to believe that the transferrer intended to give a preference, as hereinbefore defined, and the transfer is voidable.

"But if the facts and circumstances within the knowledge of the creditor or his agent at the time of the transaction do not create more than a suspicion in the mind of possible insolvency, then the creditor is not put upon inquiry, and he is not charged with knowledge of his debtor's financial condition.

"It is for the jury to determine upon the evidence in any given case whether the facts and circumstances known to the creditor, or his agent, at the time of the transfer by the debtor which is the subject of investigation, were adequate to furnish

a reasonable cause to believe that a preference in the meaning of the law was intended to be given, or whether, falling short of this, they simply sufficed to create a suspicion in the mind of possible insolvency.

"(2) The court instructs the jury further that if they believe from the evidence that on October 1, 1902, Mrs. D. A. Webb, while insolvent, and within four months of the filing of a petition in bankruptcy by her, transferred a portion of her property to the defendant with the intention to prefer it over the other creditors, and that subsequently she was adjudged to be a bankrupt, and that the defendant receiving the payment or benefiting thereby, or its agent acting therein, had reasonable cause to believe that it was intended thereby to give a preference, then they should find for the plaintiff, and assess his damages at $3,100, with interest thereon from the time demand was made on the defendant by the plaintiff, and in ascertaining whether there was a reasonable cause for such belief the jury should look to all the dealings between the parties as disclosed by the evidence, and all the facts and circumstances known to the defendant or its agent, surrounding and attendant upon the final transaction of payment.

"(3) The court instructs the jury further that, even though they may believe from the evidence that at the time he received the acceptance of D. R. Beale & Co., the defendant's treasurer had a suspicion in his mind that the debtor was insolvent, this alone is not sufficient to support a verdict for the plaintiff. They should find for the defendant, unless they believe further from the evidence that at the time of the transfer the defendant or its treasurer actually knew, or had reasonable cause to believe, that it was intended thereby to give a preference.

"(4) The court instructs the jury further that if they believe from the whole evidence that at the time of the transfer by Webb to the defendant company the said company and its

treasurer believed that Webb was solvent, and that the facts and circumstances within its knowledge or that of its agent did not furnish probable cause to believe that a preference was intended, then they should find for the defendant, even should they further believe that at the time of the transfer the debtor was actually insolvent.

"(5) The court instructs the jury that it is their province to determine from the evidence in this case, taking into consideration all the facts and circumstances established as to the nature, character, course, and details of the dealings between the plaintiff and defendant, whether this evidence establishes by a fair preponderance thereof that at the time of the transfer the debtor was insolvent, and the creditor or its agent knew it, or had reasonable cause to believe that a preference was intended, in which event they should find for the plaintiff, or whether it merely establishes that the debtor was insolvent at the time of the transfer, but that the creditor and its agent was unaware of it, or had a mere suspicion of the insolvency, in which event they should find for the defendants. Reasonable cause to believe that the debtor intended to make a preference by a transfer and reasonable cause to believe that at the time of this transfer the debtor was insolvent are the same thing, so far as the creditor receiving or being benefited by the transfer is concerned."

The thirteenth instruction requested by plaintiff and refused by the court, which is referred to in the opinion, was as follows:

"The court instructs the jury that if they believe from the evidence—

"(1) That D. A. Webb had been dealing with the defendant for a number of years, during all of which time she was not only slow in payment, but did not meet her notes at maturity.

"(2) That during the said period it knew of her 'kiting' checks, and doing acts indicating bad business methods.

"(3) That it knew, or had reason to believe, that said Webb was dealing with other merchants, and had no reason to believe she pursued different methods from those pursued with the defendant.

"(4) That the said Webb sold to Beale & Co., for $7,500, her entire business, out of which $2,000 was paid to the First National Bank of Roanoke, $2,000 to the Lynchburg Shoe Company, and $3,100 to the defendant; and

"(5) That such sale was out of the ordinary course of business, and that it was the result of the importunities of the defendant for payment, and the defendant knew these facts; and

"(6) That under such circumstances it was the duty of the defendant, as an ordinarily prudent person, to inquire as to the assets and liabilities of the debtor, Webb, before accepting payment.

"Then the law affects the defendant with knowledge of all facts that such inquiry would naturally have disclosed, and, if such inquiry would have shown that $7,500 was the fair value of Mrs. Webb's property so sold, and that all her property was not sufficient to pay the same percentage to all her creditors, they must find for the plaintiff."

*J. H. & L. D. Lewis, Smith & King, H. T. Hall, Cocke & Glasgow* and *Scott & Staples*, for the plaintiff in error.

*Wilson & Manson*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Johnston, trustee in bankruptcy of Mrs. D. A. Webb, filed his declaration of trespass on the case in assumpsit in the Circuit Court of the city of Lynchburg, the first count of which is as follows:

"James D. Johnston, trustee in bankruptcy of Mrs. D. A.

Webb, complains of The George D. Witt Shoe Company, a corporation, of a plea of trespass on the case in assumpsit, for this, to-wit: that heretofore, to-wit, on the 1st day of October, 1902, the said Mrs. D. A. Webb, while insolvent, transferred, assigned, and paid over to the said defendant, The George D. Witt Shoe Company, a large part of her estate, to-wit, the sum of three thousand one hundred dollars ($3,100) in settlement of an alleged antecedent debt claimed to be due the said defendant by the said Mrs. D. A. Webb, and without any present consideration passing from the said defendant to the said Mrs. D. A. Webb at the time of the said transfer and payment as aforesaid, and for the purpose on the part of the said Mrs. D. A. Webb of giving to the said defendant, The George D. Witt Shoe Company, a preference over her other creditors, which insolvency of the said Mrs. D. A. Webb, and her purpose of giving a preference as aforesaid, were known to the defendant, The George D. Witt Shoe Company, or it had reasonable cause to believe the same existed on the part of the said Mrs. D. A. Webb at the time of the transfer and payment aforesaid.

"And the plaintiff further says that subsequently, to-wit: On the 7th day of October, 1902, the said Mrs. D. A. Webb filed her petition in bankruptcy in the District Court of the United States for the Western District of Virginia, showing a large amount of debts due by her, to-wit, the sum of $5,864.47, and showing no assets with which to pay any portion of the said debts. And subsequently, to-wit, on the tenth day of October, 1902, the said Mrs. D. A. Webb was regularly adjudged a bankrupt by the said District Court of the United States for the Western District of Virginia, and subsequently, to-wit, on the 4th day of November, 1902, the said James D. Johnston was regularly appointed and qualified as trustee in bankruptcy of the said Mrs. D. A. Webb.

"And the said plaintiff further says that by virtue of the said appointment, trustee as aforesaid, the said money so paid passed to the plaintiff, he became duly vested with the right to demand of the said defendant, The George D. Witt Shoe Company, a return of the money so paid it as aforesaid by the said Mrs. D. A. Webb, and it became the duty of The George D. Witt Shoe Company, the defendant, to pay over to the said plaintiff the said sum of money so paid it by the said Mrs. D. A. Webb as aforesaid.

"And the plaintiff further says that, pursuing his duties in the premises, he has made regular demand of the said defendant, The George D. Witt Shoe Company, for the return to him of the said sum of money paid it, as aforesaid, by the said Mrs. D. A. Webb.

"Nevertheless the said defendant, The George D. Witt Shoe Company, not regarding its duties and obligations in the premises, although often requested to perform the same, and pay the said sum of money, or estate, of the said bankrupt to the said plaintiff, her trustee, it has failed to pay the said plaintiff the said sum of money, or any part thereof, but to pay the same it has hitherto refused, and still doth refuse: To the damage of the said plaintiff, four thousand dollars ($4,000)."

The special count is followed by the general counts in assumpsit, usual in such cases.

The defendant pleaded non-assumpsit. The jury found a verdict sustaining this plea. The court entered judgment upon it, and the case is before us upon certain exceptions taken during the progress of the trial.

The action of the court in refusing certain instructions asked for by the plaintiff in the court below, and granting others asked for by the defendant is assigned as error, but the only specific errors pointed out are with respect to the sixth and thirteenth instructions, asked for by plaintiff in error, which the court refused to give.

The sixth instruction is as follows : "If the jury believe from the evidence, (1) that on or about the 1st day of October, 1902, Mrs. D. A. Webb made a transfer of a part of her property to the defendant; (2) that within four months of the said date, namely, the 7th day of October, 1902, she filed a petition in bankruptcy, and was adjudged a bankrupt under the bankruptcy law of 1898; and (3) that such transfer was done by her with the intent and purpose on her part to hinder, delay, and defraud her creditors, or any of them; then such transfer is null and void as against such creditors, except as to purchasers in good faith and for a present fair consideration, and the property so transferred passed to her trustee, the plaintiff, and he is entitled to recover it in this action."

This instruction the court refused to give.

The first count of the declaration is under section 60, paragraphs "a" and "b" of the bankrupt law, which are as follows :

"(a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(b) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

These two paragraphs have no reference to a fraudulent transaction. The first paragraph quoted defines what shall be deemed a preference. The second prescribes the consequences

attendant upon giving a preference—first, if a preference be given within four months before the filing of a petition, or after the filing of the petition and before the adjudication in bankruptcy; and, second, if the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee.

At common law, the giving of a preference was not prohibited. By the bankrupt law it is avoided, not upon the ground of fraud, but because that law proceeds upon the idea that equality in the distribution of the assets among the creditors is just and equitable.

There is then no count in this declaration averring a fraud. But it is contended that where one has obtained money of another by a fraud the duty arises under the law to return it, which may be enforced under the common counts in an action in assumpsit, because in that action any money may be recovered by the plaintiff which in equity and good conscience the defendant is not entitled to retain as against him.

This proposition gives us no concern in this case. Its truth may be conceded. The facts, however, do not establish a fraud at common law. All that is set forth in the instruction may be true, and the result of it would be that the defendant would be guilty of a fraud by virtue of the terms of the bankrupt act, but not at common law, as it is administered in our courts. To constitute such a fraud, the purpose must have been participated in by the vendee as well as by the vendor, by the recipient of the money as well as by him from whom it was received; while, on the other hand, a sale made for a past or existing consideration is, with us, as valid and as free from legal wrong, if that be the only objection which can be urged to it, as though it were made for a present consideration.

The instruction states a good case under paragraph "e" of

section 67 of the bankrupt law, which declares, that "all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors, except as to purchasers in good faith and for a present fair consideration." But there is no count which presents the plaintiff's case under this section of the bankrupt act. In other words, to have granted the instruction would have been to permit the plaintiff, as trustee in bankruptcy, to recover for a violation of the bankruptcy law which was not pleaded, on the strength of a rule of law and practice belonging to the common law of the State. There could be no recovery under paragraph "e" of the bankrupt law, because it was not pleaded; and there could be no recovery as a fraud at common law, because the facts stated in the instruction did not warrant it.

The thirteenth instruction was properly rejected because it did not state the whole evidence. It omits any reference to a general course of dealing between the parties, running through a number of years, the reports of mercantile agencies as to the solvency of the bankrupt debtor at the beginning of the year and within a month of the transaction under investigation, and that the defendant had recently sold her a large bill of goods and received from her large sums of money.

It appears also that the instructions given by the court were quite sufficient to guide the deliberations of the jury. They were fully advised as to the law governing preferences given by an insolvent debtor, as it affected not only the debtor himself but the person to be benefited by the preference.

Upon the facts, the case is before us as upon a demurrer to the evidence, and the question for the jury to consider was

whether or not the shoe company had reasonable cause to believe that when the money was paid to it, its debtor was insolvent, and that the effect of the transaction would be to give to the shoe company a greater percentage of its debt than any other creditor of the same class.

There was much to excite suspicion, but we cannot say that facts were proved which were sufficient to give the shoe company reasonable cause to believe that a preference was being given. Where the facts are established, the legal consequences which flow from them are questions of law for the court; but we cannot say, in the face of the verdict of the jury upon the evidence, that such facts are established. In considering the case, we must, of course, put ourselves in the attitude of the shoe company before the sale was consummated. The evidence is by no means clear that at that time the shoe company knew, or was in the possession of facts from which it "had reasonable cause to believe" its debtor to be insolvent. It is not enough that it suspected. It must have had reasonable cause to believe that a preference was intended, in order to subject it to the penalty imposed by the act.

As was said by Mr. Justice Bradley, in *Grant* v. *Nat'l Bank*, 97 U. S. 80, "It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further. He may feel anxious about his claim, and have a strong desire to secure it,

and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose. The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some ground of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided. Hence the act very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires for that purpose that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

Upon the whole case we are of opinion that the judgment should be affirmed.

*Affirmed.*