### BEALL v. BANK OF BOWDEN.

(District Court, N. D. Georgia. January 8, 1915.)

BANKRUPTCY ⬅166 — PREFERENCES — ACTION BY TRUSTEE — "REASONABLE CAUSE TO BELIEVE."

The words "reasonable cause to believe" that a bankrupt intended to prefer a creditor, as used in Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, as amended by Act June 25, 1910, c. 412, 36 Stat. 838, authorizing the trustee to recover a payment as a preference in case the creditor had reasonable cause to believe that the payment would effect a preference,

etc., means not merely that the creditor had cause to suspect that the debtor was insolvent, but that he must have had knowledge of facts sufficient to induce a well-grounded belief of such fact, and that the payment would effect a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250-253, 255-258; Dec. Dig. &=166.

For other definitions, see Words and Phrases, First and Second Series, Reasonable Cause.]

In Equity. Bill by James Beall, trustee in bankruptcy of one Waller, against the Bank of Bowden, to recover a preference. Bill dismissed.

Moore & Pomeroy, of Atlanta, Ga., and Roop & Fielder, of Carrollton, Ga., for plaintiff.

Boykin & Boykin and S. Holderness, all of Carrollton, Ga., for defendant.

NEWMAN, District Judge. I have gone over the record in this case and the briefs of counsel twice, and after a pretty thorough examination of the matter I am satisfied that the trustee is not entitled to recover in this case. The case of Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, while the case arose under the Bankruptcy Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), was construing what is meant by having "reasonable cause to believe" a person insolvent. The language of Mr. Justice Bradley, in the opinion delivered by him for the court, which has been several times quoted as authority, may well be quoted again, as follows:

"Some confusion exists in the case as to the meaning of the phrase 'having reasonable cause to believe such a person is insolvent.' Dicta are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to suspect such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of the facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases, if mere grounds of suspicion of their solvency were sufficient for the purpose. The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an

engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided. Hence the act very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires for that purpose that his creditor should have some reasonable cause- to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

In the subsequent case of Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640, Mr. Justice Miller, delivering the opinion of the court, in the course of his opinion said this:

"The whole matter turns upon the question whether Krieger, who acted almost alone for the bank, had reasonable ground to believe that Melter was insolvent at the time the mortgages were made. The District Judge, who decided that he had such reasonable ground, does not seem to have given due weight to the principles of the case of Grant v. National Bank, decided by this court, and reported in 97 U. S. 80 [24 L. Ed. 971], a case which was fully considered, and which has since been followed by us as a leading one on the subject. That case establishes the doctrine that a creditor dealing with a debtor whom he may suspect to be in failing circumstances, but of which he has no sufficient evidence, may receive payment or security without violating the bankrupt law. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, yet such relief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by law. In the case before us the testimony of Krieger himself, as the one who best knows the strength of the suspicion, if any, on which he acted, and what evidence was before him, must chiefly control. We have examined his deposition very carefully. We think it bears the impress of candor, and it negatives the idea that he had reasonable ground to believe Melter insolvent, or that he actually did believe it. The evidence, outside of this, as to the various estimates of the value of Melter's property and the amount of his debts, while it shows that Melter was probably insolvent, does not show that this was known to Melter himself, or to Krieger, or that the latter had reasonable grounds to believe him so."

In the case of In re Eggert, 102 Fed. 735, 43 C. C. A. 1, decided by the Circuit Court of Appeals for the Seventh Circuit, in the opinion of Circuit Judge Jenkins it is held that these decisions under the Bankruptcy Act of 1867, and a number of other decisions referred to in that case, are applicable under the present bankruptcy law. In the opinion Judge Jenkins says, referring to the term "insolvency" as used in the two acts:

"In this respect the act is widely different from the Bankruptcy Act of 1867. There the term 'insolvency' was construed to mean an inability to meet one's obligations as they matured in the ordinary course of business. The term 'insolvency' in the present act is equivalent to the term 'bankruptcy' in the former act."

And after these expressions the judge proceeds:

"While, therefore, rulings under the former act are applicable in a certain sense, because of this difference in meaning of the term 'insolvency,' they do apply so far as they determine the principles of law by which it is to be ascertained whether a creditor receiving a preference had reasonable cause to believe that the debtor had not at the time property sufficient, at a fair valuation, to pay all his debts."

Of course the provision of the Bankruptcy Act since the amendment of 1910 is different somewhat from what it was in the original act. The language now is:

"Shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee, and he may recover the property or its value."

The case of Tumlin v. Bryan, 165 Fed. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960, decided by the Circuit Court of Appeals of this circuit is an interesting and an important case on this subject. In the course of the opinion Circuit Judge Shelby says this:

"Reasonable cause to believe that a preference was intended cannot be held to be proved by circumstances that would merely excite suspicion. And circumstances may seem suspicious after the bankruptcy occurs that would not appear unusual at the time of their occurrence, and would then have presented no 'reasonable cause' on which to found a belief of intended preference."

This, of course, was under the Bankrupt Act before the amendment in 1910.

The case of Kimmerle v. Farr, 189 Fed. 295, 111 C. C. A. 27, decided by the Circuit Court of Appeals of the Sixth Circuit, is along the same line, as I understand it, of the cases heretofore cited, and the opinion contains an interesting discussion of the question here involved.

Applying the rule which is now clearly the correct one in cases like this, it must be determined whether the bank in this case had "reasonable cause to believe" that the effect of the payment received by them would be to give them a preference. Of course, this would carry with it necessarily the belief that Waller, the bankrupt, was insolvent. I do not see, after the examination I have given the evidence in this case, that what was known to the bank would work more than a suspicion, at the most, that Waller might be unable to pay his debts, and consequently that it was getting a preference. The bankrupt had obtained $9,500 of insurance, and he had some real estate, and it seems, as I gather it from the evidence, to have been the general opinion that his insurance and his other property would be sufficient to pay his debts.

Of course, the burden was on the trustee to show (in the language of the Bankruptcy Act) that the bank had, at the time the payment was made, "reasonable cause to believe" that the payment to it "would effect a preference." This the trustee has failed to show, in my opinion, and consequently he cannot recover.

There must be a decree dismissing the bill.