FRANK C. LAWTON, trustee in bankruptcy of George M. Mitchell, Jr., trading as George M. Mitchell Company, respondent,

*v.*

GEORGE M. MITCHELL, JR., et al., appellants.

[Submitted October term, 1934.  Decided January 10th, 1935.]

*Mr. Peter Cohn* and *Messrs. Mendelsohn & Mendelsohn,* for the appellants.

*Mr. Edward F. Merrey,* for the respondents.

The opinion of the court was delivered by

LLOYD, J.  The appeals (there are two) are from so much of the decree below as declares the transfer of certain assets

of George M. Mitchell, Jr., to George M. Mitchell Company, to be null and void; of so much of the decree as directs the transfer of these assets from the complainant, and the reference to a master to ascertain the value of the assets not so transferred; of so much of the decree as declares null and void a sale by the sheriff to the appellant Snyder.

We find ourselves unable to approve of this decree. The evidence taken by the learned vice-chancellor discloses that Mitchell had been for fifteen years prosperously engaged in business as a plumbing and heating contractor. Caught in the depression he found himself unable to finance certain large contracts, and upon the promise of friends to advance money for the purposes of his business if it were taken over by a corporation, such a corporation was formed. Certain assets of the business, including the contracts referred to and $2,050 in cash were transferred to the corporation and the stock of the corporation issued to Mitchell therefor. It is this transfer that is attacked in the bill.

There is no question raised as to the consideration and the equivalence in value of the stock issued for the business assets so transferred. Nor could there be, inasmuch as the stock so given constituted substantially the entire stock issue, and the property so transferred the entire assets of the corporation.

Before organizing the new corporation and transferring a portion of his business assets to it Mitchell consulted with his principal creditors, laid before them his plans to accomplish this result and the promises of financial assistance that he had received. To these plans no objections were made by the creditors thus consulted, but before consummating the sale Mitchell caused notice to be sent to all of his creditors of his intention thus to transfer such assets, in accordance with the Bulk Sales act, and again no objection was interposed.

Whether at the time of the transfer on November 7th, 1932, Mitchell was actually insolvent may be open to doubt. His statements to his bank, his principal creditor, exhibit large though diminishing assets in excess of liabilities; that

of April 30th, 1931, showing net worth of $160,000; that of February 29th, 1932, a net worth of $152,000; and one of August 31st, 1932, a net worth of $72,000. Among his assets were valuable pieces of real estate, a fine residence in Paterson, a country home and office building (none of which were included in the transfer here attacked) and stocks and bonds, together with large obligations due upon contracts from debtors.

Recognizing an apparent over-valuation of assets, in the light of later events and extreme fluctuations then taking place in prices, it is possible that actual insolvency may have been fairly inferred when the transfer was made in November, 1932.

Assuming this, the proofs are far from exhibiting a debtor seeking to defraud his creditors by transfer of his property (the burden to prove which rested on complainant below). On the contrary it presents the picture of a theretofore prosperous business man seeking to save his creditors as well as himself from the misfortune which ultimately came to both. The sale by Mitchell to the corporation included but a fraction of his assets, being only his business, its equipment and supplies, the contracts referred to, together with the cash item of $2,050. It was effected with the tacit assent of his largest creditors and after notice to all. In return he received the entire stock of the newly formed corporation, a change of ownership in form but not in substance. What he held before he still held in the shares of stock. The *bona fides* of the transaction and his faith therein is evidenced by the transfer of his own available money and the investment of his widowed sister's savings of $3,000 in the corporation after its formation, and the promise of friends to assist financially after the transfer was made by taking stock in the corporation. These promises were attested by testimony other than that of Mitchell himself, and failed of fulfillment only because of financial inability of those making the promises to carry them out. So much for the transfer.

Nor do we think the decree setting aside the sheriff sale to the appellant Snyder stands in any better light. Here

again the burden was on the complainant to prove not only that insolvency existed, but that Snyder "had reasonable cause to *believe* that the enforcement of the judgment would effect a preference." Section 60 D and section 67 F of the Bankrupt act. *Collier on Bankruptcy (12th ed.) 903.* Even suspicion is not enough. This eminent author (at *p. 908*) cites with apparent sanction the case of *In re Eggert, 98 Fed. Rep. 843,* where it is said that "the result of all these decisions (cases reviewed) we take to be this: That the creditor is not to be charged with knowledge of his debtor's financial condition from mere non-payment of his debts, nor from circumstances which give rise to mere suspicion in his mind of possible insolvency." See, also, *Grant v. Bank, 97 U. S. 80.*

The Snyder judgment was obtained by default on December 10th, 1932; the bankruptcy occurred January 7th, 1933. The judgment was thus within the four months period specified by the Bankrupt act, but, as stated, it was essential that the complainant show that the claim on which the judgment was based was not a valid one or that Snyder had reasonable cause to believe that the enforcement of the claim would effect a preference over other creditors in an insolvent estate; that is, that the enforcement of his claim would prevent other creditors from obtaining their money.

We think this burden has not been met. The attack on the *bona fides* of the claim itself is without evidence to support it. Not only is this true, but the evidence of Mitchell, Snyder, Mitchell's bookkeeper, and the books of account establish its genuineness. The loans upon which it was based are so clearly traced as to leave no uncertainty on this point.

The claim being genuine, we think complainant likewise failed to bring home to Snyder knowledge or reasonable ground to believe Mitchell insolvent or that his action would deprive other creditors of their money. It must be remembered that Mitchell had but recently been a comparatively rich man. Like thousands of others he was without ready cash, but nothing to suggest insolvency. A corporation had just been formed to meet the business needs and into it the

money of Mitchell and his sister had gone. While Snyder was not the bookkeeper, but the manager of the practical side of the business, this action, having the appearance of success rather than failure, was apparent to him. When the judgment was obtained neither Mitchell nor Snyder thought of insolvency. Even at the time of filing of the petition in bankruptcy Mitchell did not accept the idea that he was insolvent, but while recovering from illness acceded to the step only on the insistence of the bank, his principal creditor. Snyder was spurred to action at the time suit was brought by differences that arose between Mitchell and himself and Mitchell's contemptuous treatment of his request for payment, and not by desire to defeat other creditors.

It is urged that because Mitchell, on demand of the sheriff holding the execution, produced his certificate of stock in the corporation to that officer for purpose of a levy, Snyder was put on inquiry, but this we think is insufficient to meet the burden cast on the complainant. Presented with the execution, he was told by the sheriff's officer that there was nothing else for him to do. This can hardly be said to have been a voluntary act suggesting insolvency to Snyder. Even though it were otherwise, it came too late. The language of the Bankrupt act is that the creditor shall *then* have reasonable cause to believe, &c., and "then" refers to the entry of the judgment. *Collier 903.* When the stock was produced to the sheriff the judgment of course had been previously entered.

The decree is reversed, with direction that the bill of complaint be dismissed.

*For affirmance*—PARKER, CASE, BODINE, PERSKIE, WELLS, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, LLOYD, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ. 8.