FRUIT DISTRIBUTING CO., INC. *v.* SHOWS.

Nov. 2, 1953

No. 38922 41 Adv. S. 8 67 So. 2d 512

*Snow & Covington,* Meridian, for appellant.

*Lyle V. Corey,* Meridian, for appellee.

HALL, J.

Roger B. Shows, as Trustee in Bankruptcy for Clifford H. Anderson and Thomas H. Webb, doing business as Thrifty Food Stores, brought this suit against appellant to recover for an alleged voidable preference consisting of money paid by the bankrupt partnership firm to appellant within four months preceding the institution of involuntary bankruptcy proceedings against them on May 22, 1951. The preference consisted of the collection by appellant in February and March, 1951, of checks of the bankrupt which had been previously given to appellant for credit on the account which the bankrupt owed appellant in the aggregate amount of $2,736.69, for which the lower court entered judgment in favor of the trustee and against appellant.

In 6 Am. Jur. (Revised 1950), p. 1175, Bankruptcy, Section 1049, it is said that ▮▮ ▮ the elements of a voidable preference are (1) a transfer of the property of a debtor to a creditor on account of an antecedent debt, (2) the insolvency of the debtor at the time of the transfer, (3) the occurrence of the debtor's bankruptcy within four months, (4) advantage obtained by the creditor over other creditors. of the same class, and (5) reasonable cause on the part of the creditor to believe the debtor to be insolvent. In the same section it is further said that the absence of any one of these requisite elements

prevents a recovery by the trustee of the property transferred. Section 1174 of the same text says that the burden of proof is upon the trustee to show the existence of each of the elements of a preference and the conditions which render it voidable, and Section 1175 says that when a debtor pays, and a creditor receives, the amount of a just debt , the natural presumptions are in favor of the good faith of the transaction. See also Carroll Notion Company v. Neville, 65 So. 2d 140, not yet reported in the State Reports.

Appellant contends that appellee did not meet the burden of showing that it had reasonable cause to believe the debtor to be insolvent and that for this reason the judgment of the lower court should be reversed. There is no substantial dispute in the evidence on this feature. Anderson and Webb had been operating a retail grocery store and making purchases from appellant over a period of about three years. On one occasion they opened another store but discontinued it in 1950. They frequently gave checks to appellant over this period of three years which would be dishonored by the bank because of insufficient funds. Appellant would hold these checks until there were sufficient funds on deposit with which to pay them, and would then collect them. Such handling of checks on account was not unusual in appellant's business. It had twenty or thirty customers whose accounts were handled in the same manner. Appellant never asked for or received a financial statement from Anderson and Webb. There is no showing in the record that any suits were ever filed against the bankrupt or that any creditors were pressing them or that any claims against them had ever been placed in the hands of attorneys for collection. There is no claim by appellee that appellant had any actual knowledge of the insolvency of the debtor. It is only contended that under the facts appellant had reasonable cause to believe its debtor was insolvent.

 Under the rule followed by this Court, we will not reverse a chancellor's finding on a disputed question of fact, but in this case there is no dispute as to the facts and the question presented is whether under the facts shown by the record there is sufficient basis to support a finding that the creditor has reasonable cause to believe its debtor insolvent.

In the case of Grant v. First National Bank of Monmouth, Illinois, 24 L. Ed. 971, 97 U. S. (7 Otto) 80, the Supreme Court of the United States said: "Some confusion exists in the cases as to the meaning of the phrase, 'having reasonable cause to *believe* such a person is insolvent.' *Dicta* are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to *suspect* such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the Act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim and have a strong desire to secure it, and yet such belief as the Act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And

yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were· sufficient for the purpose.

"The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the Bankrupt Law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided.

"Hence the Act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

It will be noted that the creditor must have knowledge of some fact or facts calculated to produce a belief in the mind of an ordinarily intelligent man that the debtor was insolvent when he obtained the preference. We are of the opinion that the facts in the case at bar are not sufficient to meet this test. The burden of proof was on the appellee to make out his case, and, he having failed to do so, the judgment of the lower court will be reversed and judgment entered here for appellant.

Reversed and judgment here.

*McGehee, C. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.