Leonard M. SALTER, Trustee in Bankruptcy of Fayne Construction Co., Inc.,

v.

**GUARANTY TRUST COMPANY OF WALTHAM.**

Civ. A. No. 54–9.

United States District Court
D. Massachusetts.

April 17, 1956.

**112**

Edward I. Perkins, Boston, Mass., for plaintiff.

David S. Kunian, Boston, Mass., for defendant.

FORD, District Judge.

This is an action by the trustee in bankruptcy of Fayne Construction Co., Inc., adjudicated a bankrupt on March 10, 1953, to recover an alleged preference. Plaintiff seeks to recover a total of $13,000 paid by bankrupt to the defendant bank on various dates between December 8, 1952 and December 26, 1952.

The bankrupt corporation, organized in June 1951, had a place of business in Boston and was engaged in remodeling kitchens and bathrooms. It began to do business with defendant bank in January 1952, opening a checking account and borrowing money from time to time on notes. Fayne, the president and treasurer of the bankrupt, had been introduced to Morrison, then vice-president and treasurer of the bank, by one Sundell, who did accounting work for both the bankrupt and the bank. During this period two financial statements of Fayne Construction Co., Inc., prepared by Sun-

dell, were submitted to Morrison. The first showed the company as making a net profit for the six months ending December 31, 1951, of $3,991 and for the year ending June 30, 1952, of $91.

Between January 24, 1952 and December 5, 1952, the bank made ten loans to the corporation, some of these, however, being renewals of notes not paid when originally due. Each note was endorsed individually by Fayne and one Howard, the other principal officer and stockholder of the corporation. This was done as a part of the bank's normal procedure of requiring such individual endorsements for its own greater security.

The transactions during December 1952 must be set forth in detail since this is the critical period. As of December 1 there were outstanding several notes of the corporation to the bank which were paid off during the month. These were a note for $5,000 due December 1, a note for $5,000 due December 17 which was a renewal of a note originally due on August 18, and a $3,000 balance on a note for $5,000 due October 27, $2,000 having been paid on account on November 10. On December 5 a renewal note was given for this $3,000 balance. This new note was due on December 29.

On December 8 a payment of $2,000 was made on the note due December 1 by means of a check on bankrupt's account with the National Shawmut Bank. On December 11 the remaining $3,000 due on this note was paid, and $4,000 paid on the note due December 17, these payments being made by check on the corporation's account with defendant. On December 12 the remainder, $1,000, due on the December 17 note, was paid and $1,500 was paid on the renewal note due December 29, these likewise being by check on the account with defendant. The balance of $1,500 on the December 29 note was paid in two instalments, $600 in cash on December 15 and $900 on December 26, there being no evidence as to whether this last payment was by cash or check.

Around the middle of November 1952 the bankrupt's average checking balance

with defendant dropped from an average of over $3,000 to an average of less than $1,000. Defendant's records show the account overdrawn on several dates in December, in the amount of $408.09 on December 4, $249.34 on December 8, and $471.44 on December 11. In each case deposits were made on the following day sufficient to cover the overdraft. On two other days the account was shown as overdrawn in the course of the day's transactions, but showed a black balance on the final entry for the day. During December deposits to the account totaled $13,582.49. The final deposit was made on December 15. The account was finally closed on December 22.

Three trustee writs in actions brought against Fayne Construction Co., Inc., by suppliers of materials were served on the bank on December 12, December 17, and December 18. Morrison never called Fayne to inquire as to the circumstances of these trustee writs. The bank's answers to these writs were signed by Morrison.

On December 17, 1952, the Fayne Construction Co., Inc., made an assignment for the benefit of creditors. Notices of a trustee's sale under the assignment were published in a Boston newspaper on December 21 and 22 and the sale was held on December 23. Morrison testified that he did not know of this assignment at the time and the newspaper notices came to his attention only around the first of January.

Both Fayne and Morrison testified that Fayne never informed Morrison of the precarious financial position of the corporation. Morrison called Fayne several times in regard to overdue notes. Fayne's explanation to Morrison was that he could not pay at the time but would pay when he received his payment on various contracts when he had completed the work. He said he had $15,000 to $20,000 coming in on such work. Morrison knew that the bankrupt corporation undertook jobs under FHA loans, where the financing bank established a credit for the property owner and paid the contractor when the work was completed and a proper certificate of completion executed. In fact, some of these contracts had been financed by defendant bank. It appears also from a notation in Morrison's notes on this account that he was aware that the corporation also had contracts financed by the National Shawmut Bank, and that it also had an account in that bank.

An accountant who examined the books of the bankrupt corporation testified that on December 17, 1952, the books showed an excess of liabilities over assets. A like excess was shown by examination of the books as of October 21, 1952. There are 81 general creditors of the bankrupt whose claims total over $43,000 and who have not been paid in full.

The essential issue here is whether Morrison, who represented the bank in its dealings with the bankrupt, in the light of the facts known to him, had, at the time any or all of these payments were made to the bank, reasonable cause to believe the debtor was insolvent. Bankruptcy Act § 60, sub. b, 11 U.S.C.A. § 96, sub. b. On the evidence it cannot be found that Morrison had any actual knowledge of the debtor's insolvency. It is the contention of the trustee, however, that on the facts known to Morrison, there was reasonable cause for a prudent business man to believe the debtor insolvent or at least to lead him to make such further inquiry into debtor's affairs as would have revealed its insolvency.

While numerous cases have been cited by both sides, it is evident that the decision of this question in each case must be determined largely by the facts of that particular case. Here there can be no doubt that Morrison knew or should have known that the bankrupt was in financial difficulties, but this is not necessarily enough to show that Morrison should have known that the corporation was insolvent. The failure to pay loans when they were due, the falling off of the corporation's balance in its account with the defendant showed that the corporation did not have a large amount of readily available cash assets. Morrison, however, knew that the corpo-

ration had another account with a Boston bank. Moreover, knowledge that a debtor is short of cash is not necessarily grounds for believing it is insolvent. Here inquiry by Morrison had produced at statement by Fayne that funds would be available when work in progress was completed and payment received therefor. It was reasonable for Morrison to accept this explanation since he knew that the corporation's work was financed by FHA loans, some of which had been made by his own bank.

Plaintiff relies on certain aspects of these transactions as being of such an unusual nature that Morrison should at least have been put on inquiry as to the corporation's solvency. It is true that under some circumstances the payment of a debt before it is due might be very significant. But here the notes paid off before maturity were all renewals of loans which originally had been due much earlier. Since Fayne had promised to pay when he collected for his work in progress, it was not necessarily suspicious that some payments were made before the renewal notes were due. Likewise the single payment made in cash cannot be considered too significant in view of the fact that practically all of the $13,000 paid here was paid by check, with no attempt at concealing the fact that the bank's loans were being paid off.

■ As to the trustee attachments, these cannot affect anything except the payments made after they were served on the bank. The first of these was on December 12, but there was no evidence to indicate that it was served on that day before the bank received the payments made on that day. Even if it had been, a single trustee writ would hardly be sufficient reason for putting the bank on inquiry.

■ So far as concerns the payments made through December 15, the facts known to Morrison showed that the corporation lacked ready cash to pay its bills when due. This is not insolvency, however. Even though Morrison may have had grounds for suspecting the corporation was insolvent, mere suspicion or apprehension that the debtor is insolvent is not enough. To allow recovery under § 60, sub. b the facts must have been such as to create in the mind of a reasonably prudent business man a well-grounded belief in the insolvency of the debtor. Grant v. National Bank, 97 U.S. 80, 24 L.Ed. 971. In this case, the facts known to Morrison were perfectly consistent with the picture given to him by Fayne of a business temporarily short of ready cash until it completed its contracts and collected its payment for them. What he knew about the corporation's way of carrying on its business tended to support that picture. There was no evidence that he knew anything of the extent to which the corporation was indebted to others. Viewing the evidence as a whole, it cannot be found that plaintiff has sustained his burden of proving that Morrison, at least prior to December 17, had sufficient grounds for believing the debtor insolvent.

■ As to the final payment on December 26, the situation is different. By this time there were three trustee writs served within a few days indicating that suppliers of the corporation were becoming seriously concerned about collecting their claims. Moreover, the corporation's account appears to have been closed on December 17. At this point, the situation became such that the bank should have been put on inquiry as to whether the financial difficulties of the debtor, which it knew to exist, had progressed to the point of insolvency, and inquiry would readily have revealed that they had.

On December 26 when the final payment was made to the bank in payment of its antecedent debt, the debtor was clearly insolvent, and the transfer clearly enabled the bank to obtain a greater percentage of its claim than other unsecured creditors. Hence, this payment was clearly a preference, and in the light of the knowledge chargeable to Morrison as of that date, it is recoverable by the trustee.

Judgment for plaintiff in the sum of $900.