George CLOWER, Trustee in Bankruptcy of the Estate of Sinton Plumbing & Supply Co., Inc., Plaintiff,

v.

FIRST STATE BANK OF SAN DIEGO, TEXAS, Defendant.

Civ. A. No. 2160.

United States District Court
S. D. Texas,
Corpus Christi Division.

March 26, 1964.

R. Briscoe King and C. R. Porter, Jr., Corpus Christi, Tex., for plaintiff.

Archer Parr, San Diego, Tex., for defendant.

GARZA, District Judge.

This is an action brought by the Trustee in Bankruptcy of the Estate of Sinton Plumbing & Supply Co., Inc., as Plaintiff, against the Defendant Bank, First State Bank of San Diego, Texas, in which Plaintiff Trustee seeks by such action to recover the sum of $8600.00 from the Defendant Bank, alleging that said $8600.00 was a preferential payment by the Bankrupt to its creditor, the Defendant Bank, within a period of four months prior to the filing of the bankruptcy petition.

The question before the Court is to determine whether the payments amounting to $8600.00 were in truth and in fact preferential payments by the Bankrupt to the Defendant Bank.

It has been stipulated by the parties as follows:

1. The Bankrupt, Sinton Plumbing & Supply Company, Inc., executed a promissory note on the 26th day of April, 1961, in the principal sum of Ten Thousand Dollars ($10,000.00), payable to the Defendant, First State Bank of San Diego, Texas, and being due and payable thirty (30) days from its date, the due date being specified as May 26, 1961, said note bearing interest at the rate of seven per cent (7%) per annum from date and ten per cent (10%) per annum from maturity until paid, and further providing for ten per cent (10%) additional on both principal and interest if the note be placed in the hands of an attorney for collection. That no payments were made on said note of date April 26, 1961, and said note was renewed on the 16th day of August, 1961, in the same principal sum of Ten Thousand Dollars ($10,000.00), and bearing the same interest and provisions for attorney's fees as provided for in the original note; said renewal note being due and payable thirty (30) days after date of execution, the specified due date being September 16, 1961.

2. That on the 5th day of December, 1961, there was due and owing on the principal of said note of date August 16, 1961, the sum of Eight Thousand Dollars ($8,000.00). That on said 5th day of December, 1961, the Bankrupt, Sinton Plumbing & Supply Company, Inc., paid the Defendant the sum of Two Thousand Dollars ($2,000.00) on said note, leaving a balance due in the sum of Six Thousand Dollars.

3. That on the 22nd day of January, 1962, the Bankrupt, Sinton Plumbing & Supply Company, Inc., paid the Defendant Bank the sum of Six Thousand Dol-

lars ($6,000.00) on said note of date August 16, 1961.

4. That on the 22nd day of January, 1962, the Defendant Bank drew a draft on the account of the Bankrupt, Sinton Plumbing & Supply Company, Inc., said draft being on the Chas. Schreiner Bank of Kerrville, Texas, in which bank the Bankrupt had certain sums on deposit. That said draft was honored and the sum of Six Hundred Dollars ($600.00) was paid to the Defendant, First State Bank of San Diego, Texas.

5. It is further stipulated and agreed that the aforesaid sum of Six Hundred Dollars ($600.00) represented attorney's fees as provided for in the provisions of said note of date August 16, 1961.

6. It is further agreed and stipulated that both the note of April 26, 1961, and the renewal note of date August 16, 1961, were executed by Sinton Plumbing & Supply Co., Inc., by and through its President, Julian Priour, Jr., who was duly authorized to do so.

Under the above stipulated facts, the only question remaining for the Court to decide was the question of whether or not the Defendant Bank knew, or had reasonable cause to believe, that its debtor Sinton Plumbing & Supply Co., Inc., was insolvent at the time the Defendant Bank received the various sums totaling $8,600.00.

The Court proceeded to receive evidence, and at the conclusion thereof the parties were allowed to present briefs.

From the evidence presented, it is clear that one Julian Priour, Jr., and another man bought the plumbing business that went bankrupt, from H. M. Ford. The first contact that the Bankrupt had with the Defendant Bank was through this other man who was seeking to get credit for the Bankrupt to finance them on plumbing jobs that they were working on. The Bank made the original loan on the strength of the endorsement of H. M. Ford who had a net worth of some forty times over the note; and because of this fact, the Bank never really worried about the collection of its indebtedness.

The Bankrupt had been working on many jobs, but had received notification of a large contract in Kerrville, Texas, but the actual start of doing work on this contract was delayed by the F.H.A., and even though Mr. Priour, the President of the Bankrupt, informed a bank official that he could not even pay a dollar's worth of interest and that his business would be ruined if they were sued on the note, by the same token he kept insisting to the Bank that everything would be all right when they started working on the Kerrville job.

■ I find that the Defendant Bank did not know of the insolvency of the Bankrupt.

■ The facts that came to the attention of the Defendant Bank might only raise a suspicion that the debtor might be insolvent, but I do not find that the Defendant Bank had any knowledge of such facts as would induce a person of reasonable prudence to make inquiry when such inquiry would have developed the facts essential to a knowledge of the situation. Therefore, the Trustee cannot recover. Lang v. First National Bank in Houston, 215 F.2d 118 (CCA 5, 1954); Grant v. First National Bank, 97 U.S. 80, 24 L.Ed. 971.

The facts before the Court further developed that the Bankrupt, because of the Kerrville contract, was able to go and borrow money from other banks, with which loans he made the payments called preferential by the Trustee.

As stated in 3 Collier on Bankruptcy, sec. 60.20, at page 832:

"Even though the transferee has reasonable cause to believe the debtor is insolvent, the Bankruptcy Act does not avoid every transfer of property made by the debtor within four months of bankruptcy, but only those preferential transfers which result in a depletion of the bankrupt's estate."

■ I find from the evidence before me that the payments made by the Bank-

rupt and being questioned as preferential payments, were payments made from other loans secured by the Bankrupt, and that such payments did not in any way deplete or diminish the estate of the Bankrupt, since there was merely a substitution of one bank creditor for another.

 Having so found, I must conclude that the payments complained of were not preferential payments as claimed by the Trustee, and that the Trustee cannot recover from the Defendant Bank.

The Clerk will send a copy of this Memorandum Opinion, which constitutes my Findings of Fact and Conclusions of Law, to the attorneys for the parties.