MARSHALL v. NEVINS.

(Circuit Court of Appeals, Ninth Circuit.    May 14, 1917.)

No. 2892.

1. BANKRUPTCY ⊜⇒304—PREFERENCES—ACTIONS—QUESTIONS OF FACT.
    In a suit by a trustee in bankruptcy to set aside an alleged preferential
    transfer by the bankrupt to his mother-in-law, evidence *held* to make a
    question of fact as to whether the grantee had reasonable ground to be-
    lieve that the transfer to her would effect a preference, and was intended
    to effect a preference, and to support the trial court's finding upholding
    the transfer.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 463.]

2. BANKRUPTCY ⊜⇒303(1)—PREFERENCES—ACTIONS—BURDEN OF PROOF.
    In a suit by a trustee in bankruptcy to set aside an alleged preferential
    transfer, the burden of proof is on the trustee to prove that the trans-
    feree had reasonable ground to believe that the transfer would, and was
    intended to, effect a preference.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458, 459.]

Appeal from the District Court of the United States for the First
Division of the Northern District of California; M. T. Dooling, Judge.

Suit by J. W. Marshall, trustee, etc., of N. H. Hickman, bankrupt,
against Elizabeth Nevins. From a judgment for defendant, plaintiff
appeals. Affirmed.

Lloyd S. Ackerman, of San Francisco, Cal., for appellant.

W. F. Sullivan, of San Francisco, Cal., and H. C. Lucas, of Oak-
land, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge.    Marshall, as trustee of the estate of Hick-
man, bankrupt, brought suit under section 60, subd. "b" of the Bank-
ruptcy Act of July 1, 1898, c. 541, 30 Stat. 562 (Comp. St. 1916, §
9644), as amended in 1910 (Act June 25, 1910, c. 412, § 11, 36 Stat.
842), to set aside the transfer of an interest in the schooner William
Olsen to Elizabeth Nevins.    Hickman was adjudged an involuntary
bankrupt on February 2, 1916, and the transfer involved was made by
Hickman to Mrs. Nevins on December 7, 1915, within four months be-
fore the adjudication in bankruptcy.    The District Court decided in fa-
vor of Mrs. Nevins, and the trustee appeals.

[1] The sole issue in the case is: Did Mrs. Nevins know or have
reasonable cause to believe, at the time of the transfer to her, that the
transfer or its enforcement would effect a preference?    It is unneces-
sary to set forth the evidence at length, and we shall only refer to
some essential facts.    Hickman in 1897 married the daughter of Mrs.
Nevins.    From the time of his marriage, up to the time that he was
forced into bankruptcy, he was in various business enterprises, but, for
the most part, was unsuccessful, and since 1906 has been practically
insolvent.    Mrs. Nevins, his mother-in-law, was an elderly woman with
some means, and at various times from 1905 on she lent money to
Hickman.    In February, 1912, Hickman gave a note to Mrs. Nevins to

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cover the amount which was due by him to her for money loaned to him up to February 15, 1908. However, after the note was given, she lent him additional sums. He never paid principal or interest, except $968.96 paid in February, 1912, which was the amount of interest then due on his debt to Mrs. Nevins; interest being computed at the rate of 5 per cent. per annum. The Bay Shore Drayage Company, a corporation of which Hickman was president, and in which Mrs. Hickman, his wife, was the chief stockholder, was also indebted to Mrs. Nevins in the sum of $2,725 loaned to the company by Mrs. Nevins at her daughter's request. In 1914 and 1915 some judgments were obtained against Hickman by certain of his creditors, and there is testimony tending to show that Hickman for a year or so prior to 1915 was reputed to be insolvent. The trustee also introduced in evidence a certain agreement, dated January 21, 1915, between Mrs. Nevins and Hickman and the Bay Shore Drayage Company and one O. H. Greenewald, reciting that Hickman owed Mrs. Nevins certain amounts, and that, in consideration of advances by Greenewald to Hickman to carry on the business of the Drayage Company, Mrs. Nevins would consent to the payment of Greenewald by the Drayage Company in preference to the payment of the debt of the Drayage Company to Mrs. Nevins, and the Drayage Company agreed that it would pay the debt due to Greenewald in preference to the debt due Mrs. Nevins, and Mrs. Nevins agreed to defer collection of her debt against Hickman until the debt of Greenewald should be paid.

Greenewald testified that he explained to Mrs. Hickman in November, 1915, that her husband owed him some money for advances to the Bay Shore Drayage Company, and that he wanted settlement and asked her to discuss the matter with her mother, Mrs. Nevins, that Mrs. Hickman agreed to do this, and that afterwards Hickman told him that Mrs. Hickman had been to Vallejo to see Mrs. Nevins about the matter. Greenewald also says that he asked Hickman to transfer his interest in the schooner as security for his indebtedness to him, but that Hickman would not do so, and in December transferred the interest to his mother-in-law, Mrs. Nevins. Mrs. Nevins testified that she never knew anything of Hickman's business affairs, and never had the slightest reason to suspect that he was insolvent, until she read that he was adjudicated a bankrupt; that at the time her son-in-law, Hickman, transferred his interest in the schooner to her, he owed her about $10,-000 borrowed money; that she did not know that he was insolvent, or intended to make a preference in her favor, or that the transfer would effect a preference. She said that during many years she had lent money to her daughter and to her son-in-law, to be paid back to her as they might see proper; that she never discussed business with Hickman, and that there was never anything in the style of living of her daughter and son-in-law which led her to believe that Hickman was in failing circumstances; that she had perfect confidence in her son-in-law, and that the requests which he made for loans were always brought to her through her daughter, Mrs. Hickman. She explained her participation in the contract with the Drayage Company by saying that she signed it at the instance of her daughter, who told her that Mr. Greenewald was going to assist Mr. Hickman, and that by signing the

paper Mr. Greenewald would get back his money before others, but that no suspicion was created in her mind by this transaction, and that she never knew of the transfer to her of Hickman's interest in the schooner until Hickman himself told her in December, 1915, that he had transferred it to her to pay his debt to her. She said that she never asked him to do it, and that after the transfer to her she had appointed Hickman as her agent in connection with the ship.

The opinion of the District Judge was that the evidence showed that Mrs. Nevins trusted her son-in-law and daughter absolutely, and had no reason to suspect that her son-in-law was insolvent, and did not believe that he was, at the time of the transfer to her.

[2] We are of the opinion that, while the circumstances might have led to the conclusion that Mrs. Nevins had reasonable ground to believe that the transfer by Hickman to her would effect a preference, and was intended to effect a preference, still whether such reasonable cause for belief existed was a question of fact, with the burden of proof upon the trustee. The Supreme Court, in Pyle v. Texas Transport & Terminal Co., 238 U S. 90, 35 Sup. Ct. 667, 59 L. Ed. 1215, has very recently said:

"By the statute's very words, in order to set aside such a transfer and recover the property, it must appear that 'the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference.' Whether such 'reasonable cause to believe' existed is a question of fact, and the burden of proof is upon the trustee." Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478; Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Wright v. Sampter (D. C.) 152 Fed. 196.

Appellant makes the point that the appellee, Mrs. Nevins, must be charged with any knowledge of her daughter, upon the theory that the daughter was the agent of her mother. But there is no substantial proof to the effect that Mrs. Hickman was the agent of her mother, in that any knowledge which Mrs. Hickman may have had concerning her husband's affairs was to be imputed to Mrs. Nevins.

An accurate judgment upon the whole case called for a very careful estimate of the testimony of Mrs. Nevins. If she was perfectly truthful in her statements of the confidence she placed in her son-in-law, and of her ignorance of his real financial situation, and of any purpose to prefer her over other creditors, the conclusion of the lower court ought not to be overthrown. The advantage of having heard and seen the witness must have greatly aided in turning the case one way or the other. It being clear that there was no misunderstanding of the law, we are not satisfied that the learned court drew erroneous conclusions of fact from the testimony.

Affirmed.