DE FORREST, TRUSTEE, ETC., RESPONDENT, *v.* CRANE &
ORDWAY CO., APPELLANT.

(No. 3,963.)

(Submitted January 9, 1919.  Decided February 20, 1919.)

[178 Pac. 291.]

*Bankruptcy — Unlawful Preferences — Evidence — Defenses—*
*Instructions.*

Bankruptcy—"Preference"—Definition.
1. A "preference," within the meaning of the Bankruptcy Act (32
U. S. Stats. at Large, 799), is a transfer of the bankrupt's property
by means of which a creditor is enabled to obtain a greater percentage
of his debt than other of the bankrupt's creditors.

[As to preferences as avoiding composition with creditors, see
note in Ann. Cas. 1914A, 845.]

Same—What not Unlawful Preference.
2. Though a transfer of a bankrupt's property may amount to a
preference, it is not unlawful in the sense that it may be avoided by
the trustee in bankruptcy if made within a specified time, unless the
creditor receiving it had reasonable cause to believe that the debtor
intended thereby to give him a preference.

Same—Preference—How Made.
3. To constitute a transfer of a bankrupt's property an unlawful
preference, it is not necessary that it be made directly to the creditor;
if it is made by another for his benefit, it falls within the prohibition
of the Bankruptcy Act.

Same—Preference—Evidence—Insufficiency.
4. Where the evidence was insufficient to show that at the time appel-
lant accepted payment from building contractors for material fur-
nished by it to a subcontractor who thereafter was adjudged a bank-
rupt, it had reason to believe that preferences were intended thereby,
a finding of the jury that appellant did receive preferences *held*
unwarranted.

Same—Preference—Evidence—Sufficiency.
5. Knowledge in defendant supply company at the time it received
payments on accounts due it from one subsequently adjudged a bank-
rupt, that he then was an absconding insolvent, was sufficient to
charge it with notice that it was receiving preferences declared unlaw-
ful by the Bankruptcy Act.

Same—Preference—What not Defense.
6. Where, in order to enable them to deliver buildings clear of claims
of lien, contractors paid for supplies furnished to and remaining un-
paid by a subcontractor, who thereafter was adjudged a bankrupt,
defendant's contention in an action by a trustee in bankruptcy to
recover the payments as unlawful preferences, that the payors bore to
the owners of the buildings the relation of sureties or indorsers for
the bankrupt and that therefore the payments made by them con-
stituted a discharge of their own liabilities to defendant supply com-
pany, and did not amount to preferences, *held* without merit.

Same—Instructions—Inapplicability.

7. An instruction that payment of money, due a bankrupt, to the bankrupt's creditor to avoid the possibility of the filing of a material-man's lien by the creditor, would not be a defense in an action to recover the payment as an unlawful preference under the Bankruptcy Act, was proper in the absence of evidence that the defendant had perfected such lien.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Byron De Forrest, as trustee in bankruptcy, of George Wilson, bankrupt, against the Crane & Ordway Company. Judgment for plaintiff. Defendant appeals from the judgment and an order denying its motion for a new trial.

*Messrs. Cooper, Stephenson & Hoover,* for Appellant, submitted a brief; *Mr. W. H. Hoover* argued the cause orally.

There is no evidence that the bankrupt "made a transfer." While the Bankruptcy Act provides that a payment may be a transfer, it still is required that the bankrupt himself should make the payment. (Remington on Bankruptcy, 2d ed., sec. 1329). The evidence relating to the active part which the bankrupt had in the making of these payments was insufficient to justify the jury in finding that he made the payments.

There is no difference between the situation here presented and that of surety or indorser paying the bankrupt's obligation to a creditor, and it has been repeatedly held that such payment does not constitute a preference. This is true although there is an open account between the bankrupt and the surety, whereby the surety sets off the amount paid against the claim of the bankrupt. (*Mason* v. *National Herkimer County Bank,* 172 Fed. 529, 97 C. C. A. 155; *National Bank of Newport* v. *National Herkimer County Bank,* 225 U. S. 178, 56 L. Ed. 1042, 32 Sup. Ct. Rep. 633.) It would seem that if a preference has been given to anyone, it is to the three contractors, Hulden, Pappin and Anderson. They may be entitled under the Bankruptcy Act to set off the amount of these payments in an action

by the trustee against them. That is the only way in which the estate of the bankrupt would be diminished, if at all.

A payment by a solvent partner of bankrupt for goods purchased by bankrupt does not give a preference to the creditor. (*In re Hines,* 144 Fed. 543, 547.) A bank is not guilty of receiving a preference where it applies bankrupt's deposits to the payment of a note against the bankrupt. (*New York County Nat. Bank* v. *Massey,* 192 U. S. 138, 48 L. Ed. 380, 24 Sup. Ct. Rep. 199.) Where the estate of the bankrupt is not diminished, except by reason of a right of set off on the part of the guarantor, there is no preference. (*Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502, 49 L. Ed. 571, 25 Sup. Ct. Rep. 339; *Continental etc. Bank* v. *Chicago Title & Trust Co.,* 229 U. S. 435, 57 L. Ed. 1268, 33 Sup. Ct. Rep. 829.) A payment by the bankrupt to discharge an equitable lien is not a preference, even though the payment is made before the enforcement of the lien. (*Johnson* v. *Root Mfg. Co.,* 241 U. S. 160, 60 L. Ed. 934, 36 Sup. Ct. Rep. 520.) It is not a preference for a bank to receive a check from the bankrupt to pay a note where the bank could have exercised its right to take the payment from the bankrupt's deposits. (*Studley* v. *Boylston National Bank,* 200 Fed. 249, 118 C. C. A. 435, 229 U. S. 523, 57 L. Ed. 1313, 33 Sup. Ct. Rep. 806.)

There is no evidence that the defendant had reasonable cause to believe that the acceptance of any of these payments would effect a preference. (Remington on Bankruptcy, sec. 1395.) It is not enough that the creditor have reasonable cause to believe that the bankrupt is insolvent, as that term is defined by the Bankruptcy Act, but the creditor must also know that there are other creditors and have reasonable cause to believe that they will not be paid in full. (*In re First Nat. Bank,* 155 Fed. 100, 84 C. C. A. 16.) Where there is no evidence that defendant knew of other creditors, the evidence is insufficient to sustain a finding and that a preference was given. (*Stanley* v. *Pajaro Valley Bank,* 196 Fed. 365, 116 C. C. A. 401; *Grandison* v. *Robertson,* 220 Fed. 985; *Grant* v. *First National Bank,* 97

U. S. 80, 24 L. Ed. 971; *Hamilton Nat. Bank* v. *Balcomb,* 177 Fed. 155, 100 C. C. A. 575.)    There is no evidence that defendant knew that Wilson had other creditors.

The evidence was insufficient to justify the verdict as to the Anderson and Pappin payments, because it did not show that the bankrupt was at that time insolvent. (3 R. C. L., p. 273; *Tumlin* v. *Bryan,* 165 Fed. 166, 21 L. R. A. (n. s.) 960, 91 C. C. A. 200; *Jump* v. *Bernier,* 221 Mass. 241, 108 N. E. 1027.)

The burden of proof was upon respondent to make out his case in the three particulars above noted.    (3 R. C. L., p. 285.)

*Mr. P. A. Heimlich* and *Mr. F. E. Ewald,* for Respondent, submitted a brief; *Mr. Ewald* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff, as trustee in bankruptcy of George Wilson, to recover from the defendant certain sums of money paid to it by debtors of Wilson within four months prior to the filing of the petition in bankruptcy, whereby, it is alleged, the defendant obtained unlawful preferences over other creditors.    The petition was filed by several creditors of Wilson on November 11, 1914, and he was adjudged a bankrupt on January 11, 1915.

During the years 1913 and 1914 Wilson was conducting the business of a plumber at Great Falls.    He secured subcontracts from contractors and builders to install the necessary plumbing in buildings in course of construction by them in Great Falls and vicinity.    These were A. G. Anderson, Pappin & Son and A. S. Hulden.    He obtained supplies of material from the defendant on account.    On November 11, 1914, when the petition in bankruptcy was filed he had become largely indebted to the defendant.    In order that the contractors might deliver their buildings upon completion free from claims of lien for the materials furnished, they paid to defendant the amounts due

from Wilson to it for materials so furnished for each building. On August 8, 1914, Anderson paid to it on this account $133.25, and on September 10, $52.44. On August 11, Pappin & Son paid to it $100; and on September 16, Hulden paid to it $86.15, and on October 26, $113.85, making in all $200.

Plaintiff in his complaint sought recovery of other sums collected by or paid to defendant on Wilson's account, but during the trial these were eliminated from the case. The jury found for the plaintiff for the several sums above referred to, and judgment was entered accordingly. Defendant has appealed from the judgment and an order denying its motion for a new trial.

The assignment of error upon which defendant mainly relies is that the evidence did not justify the verdict in that it did not show that Wilson had made a transfer; nor that the defendant had reasonable cause to believe that any payment made to it would effect a preference; nor that at the time any payment was made the bankrupt was insolvent.

1. The provisions of the Bankruptcy Law, so far as they are pertinent here, are the following:

"Sec. 60 (a). A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition or after the filing of the petition, and before the adjudication,  *  *  * made a transfer of any of his property, and the effect of the enforcement of  *  *  * such  *  *  * transfer will be to enable any of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class," *etc.*

"Sec. 60 (b). If a bankrupt shall have  *  *  * made a transfer of any of his property, and if, at the time of the transfer,  *  *  * and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and  *  *  * the transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement

of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person.'' (32 U. S. Stats. at Large, 799, 800.)

The first of these sections defines a preference by a bankrupt, [1] to be a transfer of any of the property, the effect of the enforcement of which will enable him to whom the transfer is made to obtain a greater per cent of his debt than other creditors. The second declares that the consequence of such a transfer shall be that it may be avoided by the trustee and the property, or its value, recovered by him for the benefit of the bankrupt's estate, provided the preference was given within the prescribed limit prior to the filing of the petition in bankruptcy, or the adjudication, and the creditor to whom the transfer was made had at the time reason to believe a preference was intended. (*Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438, 45 L. Ed. 1171, 21 Sup. Ct. Rep. 906; *Benedict* v. *Deshel,* 177 N. Y. 1, 68 N. E. 999; *Swarts* v. *Fourth Nat. Bank,* 117 Fed. 1, 54 C. C. A. 387; *In re Leech,* 171 Fed. 622, 96 C. C. A. 424; Remington on Bankruptcy, sec. 1277.)

Though a transfer is made which amounts to a preference, [2] yet it is not unlawful within the meaning of section 60 (b), unless the creditor receiving it had reasonable cause to believe that the debtor intended thereby to give him a preference,—that is, to pay him a larger percentage of his claim than others would receive. As pointed out by the court in *Pirie* v. *Chicago Title & Trust Co., supra,* if reasonable cause for this belief does not exist, the preference cannot be recovered from the creditor by the trustee. Under section 57 (g) of the Act, the creditor may keep it, but if he elects to do so, he is debarred from having any balance of his debt allowed as a participating claim in the estate of the bankrupt. (*Pirie* v. *Chicago Title & Trust Co., supra.*)

Counsel, conceding that a payment of money by a bankrupt to one of his creditors may be a transfer of property whereby an unlawful preference is given insists that the payments in

question were not made by Wilson himself, nor by his assent or acquiescence, and hence did not come within the ban of the statute. In support of this contention they quote from the text of 1 Remington on Bankruptcy (2d ed.), as follows: "Although intent to prefer is not requisite to constitute a transfer a preference, yet there must be at least some voluntary action on the debtor's part or some assent or acquiescence, to constitute the transaction a 'transfer.' Seizure or appropriation of property by the creditor, or his receipt of it otherwise than by the voluntary act or assent of the debtor, will deprive the transaction of its character as a preference." (Sec. 1329.)

The evidence disclosing the circumstances under which the various payments were made may be epitomized as follows:

Anderson was engaged in the erection of two buildings in Great Falls and a third in the village of Belt. Wilson contracted with him to do the plumbing, the price of all of which aggregated $675. The contract provided that before he should be obliged to make payment to Wilson, the latter was to present receipts showing that he had paid for all materials which he had obtained from defendant or any other dealer. Anderson paid Wilson in installments as the work progressed, one installment being in cash, the others in checks made payable to defendant. Being bound by his contracts with the owners to deliver the buildings upon completion free from claims of lien for materials, after the first payment, when Wilson demanded money, Anderson insisted on having receipts from the defendant. Wilson not being able to obtain them, Anderson, by his consent, made out checks payable to defendant and delivered them directly to the defendant. The payment made on August 8 was by Wilson's express consent; that made on September 10 was without Wilson's consent, because he at that time had absconded and Anderson made it upon the presumption that he had a right to make it under the permission given him at the time of the earlier payments.

Pappin & Son were engaged in constructing a building at Great Falls. Wilson did the plumbing. When the building

was finished and ready for delivery, a balance of $100 was due Wilson. He demanded payment but it was refused until he could furnish a receipt from the defendant, showing that all the materials had been paid for. Finally, after some delay, Wilson agreed that the payment might be made by the firm directly to the defendant, and this was done. Wilson was not bound by his contract with Pappin & Son to furnish receipts showing a clearance of the building from a claim of lien.-

Hulden, being engaged in the construction of several buildings in Great Falls, contracted with Wilson to do the plumbing. Wilson had been paid everything due him except $200 for work done on one building which had just been completed. In the meantime Wilson had absconded. Thereafter, on the dates above noted, this amount was paid to the defendant by Hulden. When the last payment was made on October 26, Peters & Smith, attorneys at Great Falls, were threatening to file liens on behalf of the defendant upon the different buildings for the cost of the materials furnished to Wilson. The payment was made to prevent this. Authority had been given Hulden by Wilson, before he absconded, to make these payments, Wilson being unable to furnish receipts from the defendant.

No evidence was introduced which tended directly to show when Wilson became insolvent or when knowledge of his condition was first brought home to the defendant. That he was insolvent at the time the petition in bankruptcy was filed, was conceded by counsel for both parties. Counsel for the defendant also conceded that defendant was informed of Wilson's insolvency as early as September 3.

It is clear that none of the several payments were made [3] directly by Wilson. It is equally clear that the Anderson payment of $133.25 and the Pappin & Son payment of $100 were made by his express authority, given when they were made, and that the others were under authority assumed to have been given by Wilson before he absconded. This brings all of them within the rule laid down in the text of Mr. Rem-

ington, *supra,* and constituted them preferences. "To consti-
tute a preference it is not necessary that the transfer be made
directly to the creditor. It may be made by another for his
benefit. If the bankrupt has made a transfer of his property
the effect of which is to enable one of his creditors to obtain a
greater percentage of his debt than another creditor of the
same class, circuity of arrangement will not avail to save it."
(*National Bank of Newport* v. *National Herkimer County
Bank,* 225 U. S. 178, 56 L. Ed. 1042, 32 Sup. Ct. Rep. 633.)
Whether, therefore, the several payments amounted to unlawful
preferences depends upon the answer to the further inquiry
whether the defendant had reason to believe that preferences
were intended.

As to the payments of August 8 and 11 by Anderson and
[4]  Pappin & Son we do not think the evidence sufficient to
bring them within the ban of section 60 (b), *supra.* There are
some circumstances disclosed by the evidence which tend to show
that Wilson had become insolvent as early as July 1, 1914; but
none of them tend to show that the defendant had any knowl-
edge of his condition prior to September 3, or was aware that
he had other creditors. They go no further than to show that
Mr. O'Brien, the defendant's manager, who had exclusive con-
trol of its business at Great Falls, and Mr. Sausen, its cashier,
might have learned of it earlier, but there was no substantial
evidence tending to show that they did. It appeared from their
testimony that while Mr. O'Brien knew that Wilson had a
rating by Dun's Commercial Agency of from $500 to $1,000
only, he had undertaken on behalf of defendant to "carry"
him in order to give him a start in business, with the expecta-
tion that he would finally "make good." Both these witnesses
testified that in August they had required him to make a state-
ment of his assets and liabilities, and that his statement then
showed that the accounts due and becoming due for work done
by him were in excess of his indebtedness due to defendant,
and that he was not indebted to anyone else in more than trifling
sums. Both explicitly denied that they had knowledge or rea-

son to think that his financial condition was other than he reported it at that time to be. To render a preference unlawful and therefore voidable, it must be shown that the creditor "had reasonable cause to believe that the enforcement of such * * * transfer would effect a preference." The evidence relating to these two payments was wholly insufficient to warrant a recovery of them by the trustee.

As to the other payments the condition was different. At [5] the time defendant received them, it had full knowledge that Wilson was an absconding insolvent. This knowledge necessarily carried with it the further knowledge that he could not pay his creditors the amounts due them and that anyone of them, including itself, receiving a payment would necessarily receive a preference over all the other creditors. There was therefore evidence which justified the jury in finding that the defendant was receiving preferences by means of them which the statute declares unlawful.

Counsel insist, however, that since the contractors were [6] bound by their contracts with the respective owners to deliver the buildings clear of all claims of lien, they bore toward the owners the relation of sureties or indorsers for Wilson; hence payments by them to defendant in the amounts for which the buildings might be encumbered by way of liens did not amount to preferences. The argument is that the payors were merely discharging their own liabilities to the defendant. In support of this contention they cite, among other cases, *National Bank of Newport* v. *National Herkimer County Bank, supra,* and *In re Hines,* 144 Fed. 543. These cases are not in point. The contractors were not bound to the defendant by any engagement as sureties or otherwise to discharge Wilson's indebtedness to it. Nor were they under any obligation to Wilson other than to discharge the indebtedness due from them to him. Anderson had the right under his contract with Wilson to withhold payment until Wilson gave clearance receipts against liens; but he was at liberty to waive the presentation of the receipts and pay directly to defendant the amount due

him, by Wilson's permission. In doing this, Anderson was merely paying indebtedness which he thereby acknowledged was due to Wilson, and was not discharging any obligation due to the defendant from himself. If this were not the result, he did not discharge Wilson's debt at all but made a voluntary payment and is still answerable to the trustee in amounts equal to those so paid.

Neither Pappin & Son nor Hulden sustained any contract relations with the defendant or Wilson, authorizing them to pay Wilson's debts. They merely paid the debts of Wilson by his consent with money due him. True, it may be said that all three contractors paid under a sort of coercion in order to clear the buildings of claims of lien; but in no event could they have discharged Wilson's debts without his consent. They were not induced to make the payments by duress or menace, within the meaning of the Code provisions on the subject (Rev. Codes, secs. 4975, 4976). If there is any principle or rule of law by which the defendant can avoid liability, it has not been suggested by counsel, nor does it suggest itself to us.

In relation to the assignment that there was no evidence tending to show that Wilson was insolvent at the time any of the payments were made, counsel do not insist that the evidence is deficient as to all payments, but limit their claim to the Anderson and Hulden payments made in August. What we have said above with reference to these payments disposes of this contention.

In paragraph 7 of its charge the court instructed the jury, [7] in effect, that payments by any debtor of moneys belonging to Wilson to avoid the possibility of the effect of the filing of a lien for such indebtedness would not be a defense, because there was no evidence tending to show that the defendant ever perfected a lien to any of the sums paid to it. Counsel insist that this was error. The contention is without merit. In the absence of some arrangement by contract between the several contractors and Wilson binding him to clear the buildings of claims of lien or giving them a right to do so in case of his

failure to discharge his obligation, it must be presumed that they chose to rely upon his honesty and fair dealing to secure themselves. Hence they became his debtors and were bound to him alone.

Error is assigned upon several rulings of the court upon questions of evidence. We find no error in any of them.

The order denying defendant a new trial is affirmed. The cause is remanded with directions to the district court to modify the judgment by striking out the Anderson payment of $133.25 and the Pappin & Son payment of $100. So modified, the judgment will be affirmed.

*Modified and affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE COOPER concur.