WORDEN, TRUSTEE, APPELLANT, v. MORIGEAU, RESPONDENT.

(No. 4,126.)

(Submitted April 13, 1920.  Decided May 19, 1920.)

[190 Pac. 122.]

*Bankruptcy — Preferences — Deed—Setting Aside—Burden of Proof—Insolvency—Evidence—Insufficiency.*

Bankruptcy—Preferences—Deed—Setting Aside—Burden of Proof.

1.   A trustee in bankruptcy who sought to set aside a conveyance by the bankrupt under the provisions of the Bankruptcy Act (U. S. Comp. Stat., secs. 9586–9656) has the burden ot establishing by a fair preponderance of the evidence: The insolvency of the bankrupt at the time the deed was given; knowledge of insolvency by transferee sufficient to put a reasonably prudent person upon inquiry; and the existence of other creditors of the same class against whom the conveyance would operate unequally by allotting to them a lesser percentage on their debt than the defendant would receive by reason of the transfer.

Same—Insolvency—What may not Constitute.

2.   Financial embarrassment does not necessarily amount to insolvency.

Same—Insolvency—Suspicions Insufficient.

3.   Something more than suspicion that his grantor is insolvent is necessary to put a grantee upon inquiry àt the peril of being adjudged to have received a preference.

Same—Preferences—Evidence—Insufficiency.

4.   In a suit by a trustee in bankruptcy to set aside as a preference a conveyance by the bankrupt to his brother, an Indian, in consideration of a pre-existing debt, evidence *held* sufficient to sustain the *bona fides* of the transfer.

*Appeal from District Court, Sanders County; R. Lee McCulloch, Judge.*

ACTION by H. O. Worden, trustee of Eli Morigeau, bankrupt, against Joseph Morigeau.  From a judgment for defendant and an order denying a new trial, plaintiff appeals.  Affirmed.

Cause submitted on briefs of Counsel.

*Mr. William Wayne,* for Appellant.

The phrase, "reasonable cause to believe," as used in this section of the Bankruptcy Act, has been construed and defined in many opinions.  It covers substantially the same field as "notice."  It does not mean actual knowledge, but only

such information as would put an ordinarily prudent man upon inquiry. (*Blyth & Fargo Co.* v. *Kastor,* 17 Wyo. 180, 97 Pac. 921; *Atherton* v. *Emerson,* 199 Mass. 199, 85 N. E. 530; *In re W. W. Mills Co.,* 162 Fed. 42; *In re The Leader,* 190 Fed. 624; *Tilt* v. *Citizens' Trust Co.,* 191 Fed. 441; *Stern* v. *Paper,* 183 Fed. 228; *Patterson* v. *Baker Grocery Co.,* 73 Or. 433, 144 Pac. 673; *Utah Assn. of Credit Men* v. *Boyle Furniture Co.,* 39 Utah, 518, 117 Pac. 800; *Pepperdine* v. *National Exchange Bank,* 88 Mo. App. 81.)

Since the amendment of 1910, the intent of the bankrupt is wholly immaterial in determining whether a transfer constitutes a voidable preference. The actual effect of the transfer is substituted for the intent of the debtor, and if the inevitable effect of enforcing the transfer will be to give the creditor grantee a greater percentage of his debt than that received by other creditors of the same class, then the transfer constitutes a voidable preference. (7 Corpus Juris, p. 154, sec. 252; *Schmidt* v. *Bank of Commerce,* 15 N. M. 470, 33 L. R. A. (n. s.) 558, 110 Pac. 613; *Soule* v. *First Nat. Bank,* 26 Idaho, 66, 140 Pac. 1098; *Patterson* v. *Baker Grocery Co.,* 73 Or. 433, 144 Pac. 673; *Gill* v. *Ely-Norris Safe Co.,* 170 Mo. App. 478, 156 S. W. 811.)

The primary purpose of the Bankruptcy Act is to "secure an equal and a speedy distribution of the property of the bankrupt among his creditors" (7 Corpus Juris, sec. 10), and it should be interpreted reasonably "with a view to effect its object and to promote justice." (7 Corpus Juris, sec. 12; *In re Blount,* 142 Fed. 263.)

*Messrs. Hall & Whitlock,* for Respondent.

To constitute a preference the insolvency must exist at the time of the alleged preferential transfer. To show this condition of insolvency at the time of the transfer, the schedules filed in the subsequent bankruptcy proceedings and the appraisement filed therein are not of themselves sufficient evidence. The rule is that the burden is upon the trustee to

show by a preponderance of evidence that the condition of insolvency existed at the time the transfer was made. (Collier on Bankruptcy, 11th ed., p. 869; _Tumlin_ v. _Bryan,_ 165 Fed. 166, 21 L. R. A. (n. s.) 960, 91 C. C. A. 200; _In re F. M. & S. Q. Carlile,_ 199 Fed. 612; _Schilling_ v. _Curran,_ 30 Mont. 370, 76 Pac. 998.)

If the court should find that the transfer in question was a preference, then it is conceded that, in order to recover, the plaintiff must show by a preponderance of evidence that at the time of the transfer the defendant had reasonable cause to believe that the transfer would result in a preference in his favor. A mere suspicion on the part of a person in the position of this defendant as to the insolvency of his debtor, or as to the probable effect of a transfer, is not sufficient. (_Nichols_ v. _Elken,_ 225 Fed. 689, 140 C. C. A. 563; _Rosenman_ v. _Coppard,_ 228 Fed. 114, 142 C. C. A. 520; _Beall_ v. _Bank of Bowden,_ 219 Fed. 316; _Newman_ v. _Tootle etc. Dry Goods Co.,_ 174 Mo. App. 528, 160 S. W. 825.)

The question whether or not the defendant had reasonable cause to believe was one for the jury. The issue was submitted to the jury and it found in favor of the defendant, and this finding should not now be disturbed. (See _Kaufman_ v. _Tredway,_ 195 U. S. 271, 49 L. Ed. 190, 25 Sup. Ct. Rep. 33 [see, also, Rose's U. S. Notes]; _Coleman_ v. _Decatur Egg Case Co.,_ 186 Fed. 136, 108 C. C. A. 248; _Marshall_ v. _Nevins,_ 242 Fed. 476, 155 C. C. A. 252; _Kentucky Bank & Trust Co._ v. _Pritchett,_ 44 Okl. 87, 143 Pac. 338; 7 C. J. 274.)

MR. JUSTICE COOPER delivered the opinion of the court.

This action was instituted in the court below by appellant, as trustee in bankruptcy of Eli Morigeau, who received patent for his Indian allotment embracing the west half of the northwest quarter, and the southeast quarter of the northwest quarter of section 25, township 17 north, range 21 west of the Montana meridian, situated in Sanders county, on August 26, 1912. By deed dated December 16, 1913, recorded on the

thirty-first day of that month, the consideration being a pre-existing indebtedness amounting to the sum of $12,000, Eli conveyed the land so patented to his brother Joseph Morigeau. On February 13 following, Eli Morigeau filed his petition to be declared a bankrupt; the approved claims against his estate amounting to the sum of $8,833.85, $2,944.76 of which originated after the date of the issuance of patent. As will be observed, the conveyance was made within four months prior to the filing of the petition in bankruptcy. The district court, aided by the finding of a jury declaring that the defendant, Joseph Morigeau, did not have "reasonable cause to believe that the enforcement of said transfer would effect a preference in his favor," found for the defendant, entered judgment in his favor validating the transfer, and denied plaintiff's motion for a new trial. From the judgment and order so made, this appeal is prosecuted.

It is appellant's contention that the agreed statement of facts admits all of the elements of a voidable transfer, save two, to-wit: The insolvency of the bankrupt at the time of the transfer, and that the grantee had "reasonable cause to believe that the enforcement of such  *  *  *  transfer would effect a preference." The frailty of appellant's contention lies in the failure of the evidence to show that Joseph Morigeau knew his brother Eli was insolvent at the time of the transfer; knew that he was then indebted to other persons than himself, or, if he owed debts other than those due defendant, that he did not have sufficient other property to satisfy all his creditors. These facts the trustee is bound to establish by a fair preponderance of the evidence before a transfer of this character can be avoided. This is the spirit of the Bankruptcy Act (U. S. Comp. Stats., secs. 9585, 9656).

"By the statute's very words," says the supreme court of the United States in *Pyle* v. *Texas Transport & Terminal Co.*, 238 U. S. 90, 59 L. Ed. 1215, 35 Sup. Ct. Rep. 667 [see, also, Rose's U. S. Notes], "in order to set aside such a transfer and recover the property it must appear that 'the person receiving'

it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference.' Whether such 'reasonable cause to believe' existed is a question of fact and the burden of proof is upon the trustee.'' (*Grant* v. *National Bank,* 97 U. S. 80, 24 L. Ed. 971; *Barbour* v. *Priest,* 103 U. S. 293, 26 L. Ed. 478; *Coder* v. *Arts,* 213 U. S. 233, 16 Ann. Cas. 1008, 53 L. Ed. 772, 29 Sup. Ct. Rep. 436 [see, also, Rose's U. S. Notes]; *Wright* v. *Sampter* (D. C.), 152 Fed. 196; *Calhoun County Bank* v. *Cain,* 152 Fed. 983, 82 C. C. A. 114; 2 Remington on Bankruptcy, sec. 1404; *Marshall* v. *Nevins,* 242 Fed. 476, 155 C. C. A. 252.)

This court, in the recent case of *De Forrest* v. *Crane & Ordway Co.,* 55 Mont. 494, 179 Pac. 292, had occasion to consider a question similar to the one under discussion, and in its disposition made use of this language: ''Though a transfer is made which amounts to a preference, yet it is not unlawful within the meaning of section 60b [of the Bankruptcy Act (32 U. S. Stats. at Large, 799)], unless the creditor receiving it had reasonable cause to believe that the debtor intended thereby to give him a preference; that is, to pay him a larger percentage of his claim than others would receive. As pointed out by the court in *Pirie* v. *Chicago Title & Trust Co., supra* [182 U. S. 438, 45 L. Ed. 1171, 21 Sup. Ct. Rep. 906 [see, also, Rose's U. S. Notes], if reasonable cause for this belief does not exist, the preference cannot be recovered from the creditor by the trustee.''

The plaintiff in this case could not hope to prevail until he [1] had established by a fair preponderance of the evidence these conditions: The insolvency of the bankrupt at the time the deed was given; knowledge of insolvency on the part of the transferee sufficient to put a reasonably prudent man upon inquiry; and the existence of other creditors of the same class against whom the conveyance would operate unequally by allotting to them a lesser percentage on their debt than the defendant would receive by reason of the security given. In *Grant* v.

*Nat. Bank, supra,* this language is used by Mr. Justice Bradley: "It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt." The test [2, 3] of the sufficiency of the evidence does not rest upon the assertions by either party of his intent or belief, but on inferences which may fairly arise from the facts in evidence. (*Hamilton Nat. Bank* v. *Balcomb,* 177 Fed. 155, 100 C. C. A. 575.) Financial embarrassment does not necessarily amount to insolvency. (*In re Bratlett* (D. C.), 172 Fed. 679.) Something more than suspicion is necessary to put a reasonably prudent man upon inquiry. (*Brookheim* v. *Greenbaum* (D. C.), 225 Fed. 638.) In the latter case the court made use of these very pertinent remarks: "It does not seem to me that, in case of a man who concededly did business in such an unbusinesslike way as this bankrupt, shortness of cash and absence of free capital, continuing for so long a period of time without any insolvency, ought to be enough to put on inquiry all those who dealt with him. It must be remembered that something more than suspicion is necessary. (*Stucky* v. *Masonic Savings Bank,* 108 U. S. 74, 27 L. Ed. 640, 2 Sup. Ct. Rep. 219; *Grant* v. *National Bank,* 97 U. S. 80, 24 L. Ed. 971 [see, also, Rose's U. S. Notes]; *Sharpe* v. *Allender,* 170 Fed. 589, 96 C. C. A. 104 (C. C. A. 3d Cir.); *J. W. Butler Paper Co.* v. *Goembel,* 143 Fed. 295, 74 C. C. A. 433 (C. C. A. 6th Cir.); *Re Goodhile* (D. C.), 130 Fed. 471.) These cases all decide that it is not enough that the bankrupt is in temporary straits and the debt overdue."

The law recognizes in every person the right of absolute dominion over his property; and he may dispose of it at will, so long as he is able to meet his obligations as they fall due. But when he reaches a state of financial disability equivalent to what the bankruptcy law terms insolvency, he is precluded from making a transfer of his property, or a payment to a creditor that will give to one creditor an advantage not af-

forded to all of the same class. Unless, therefore, the evidence establishes that the transfer in question was taken by Joseph Morigeau under circumstances not justified by the law as above stated, the judgment of the district court was right and must be affirmed. In dealing with these considerations it must be remembered that the bankrupt and the defendant lived a distance of more than twenty-five miles apart; that they seldom met; that they were both Indians and wards of the federal government, and—as the testimony implies—Eli had no more capacity for keeping track of his accounts than could be expected of the average Indian of his class; so that it is hardly to be expected that he could or did impart to his brother a knowledge of his affairs sufficient to create in his mind the degree of apprehension the law demands. These conclusions are fairly deducible.

The evidence relied upon by appellant to upset the findings [4] and judgment of the jury and the court is marshaled in his brief as follows: "From 1910 to December, 1913, he [defendant] had been letting the bankrupt have money until the bankrupt's indebtedness had grown to the large sum of approximately $12,000. During these years he had been sued at law on notes which he had signed with or for the bankrupt. On the occasion of the bringing of this action, Mr. Violette, the plaintiff's attorney, went to the home of the defendant and the two rode together from Plains to Missoula, Mont., on January 24, 1912, and Mr. Violette testified, 'He told me on that trip to Missoula—we sat together all the way down—of Eli's financial troubles and gave me a history of these troubles.' We were coming down on the train to settle the suit that was brought with one of the defendants; that was the reason he was coming in to see if he could settle, and on the train he discussed Eli's financial troubles and his financial condition with me. We talked about it most all the way. He told me then that likely he would have to pay this, *that Eli was broke, that he could not pay his debts, that he owed other people,* that was the substance of what he said. The sheriff, who served the papers in the suit

referred to, came back from the defendant's home to Plains with the defendant, and during this trip the defendant told the sheriff 'that it was not his own personal debt but that it was Eli, that he went on a note with him at the Western Montana National Bank, and he said he would go in with me and try and settle it up in some way; he said Eli seemed to be in quite a little difficulty financially.' * * * The defendant told the witness that Eli owed him other money and that Eli 'was kind of hard up and owed quite a little.' Also, 'He mentioned owing other people and something to the effect that Eli was in bad shape financially.' ''

The defendant himself testified that "In 1912 he went to the bankrupt and told him that if he kept on loaning him money he would be broke. Q. And Mr. Morigeau, what made you say that to Eli? A. Well, sir, my money was going, and I could not see a prospect on his side where it was going. He was a brother of mine, and I said a whole lot, and I thought that would let him see a little where I got off at." Again the witness was asked and testified as follows: "Q. Well, what did you think, Mr. Morigeau, about the idea of his getting so heavily in debt to you, up to $12,000? A. Well, sir, after I was in so much I thought I might as well stay with it and go broke; it is hard to refuse." And again: "Q. Now, Mr. Morigeau, when you decided you would take this property from Eli in payment of everything he owed you, how much did you think the property worth? A. I thought I was getting thirty cents on a dollar and I might as well take that as nothing. Q. Might as well take that as nothing? A. Yes, and I don't believe it is worth any more to-day."

His further testimony was that, when he took the deed, he knew of no other debts for which Eli was liable; that he supposed at the time that no other claims than his own existed against him; that he did not ask Eli about his financial affairs, and no information came to him regarding them from Eli or from any other source. The testimony of Mr. Violette and the sheriff, Mr. Moser, referred to occurrences of two years prior

to the giving of the transfer by Eli, and in the very nature of things could shed but little light on the financial condition of the bankrupt at the time of the giving of the transfer to the defendant. It is not disclosed by the record that Joseph believed that the money advanced by him to Eli was not applied to the discharge of other indebtedness owing by him; nor that the taking of the transfer would give him an advantage over other creditors of Eli of the same class. On these and other questions the jury reached a conclusion which the trial court approved. On the whole, we are convinced that the evidence sufficiently preponderates in favor of the *bona fides* of the transfer to fully justify the verdict and to sustain the judgment appealed from.

The judgment and the order denying a new trial are affirmed.

*Affirmed.*

Associate Justices Holloway, Hurly and Matthews concur.

Mr Chief Justice Brantly, being absent, takes no part in the foregoing decision.

